# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FOURTH CIRCUIT

| | |
|---|---|
| THE WILDERNESS SOCIETY, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| v. ) | |
| ) | |
| UNITED STATES FOREST SERVICE, ) | Case Nos. 23-1592(L), 23-1594 |
| UNITED STATES BUREAU OF LAND ) | |
| MANAGEMENT, *et al.*, ) | |
| ) | |
| Respondents, ) | |
| ) | |
| and ) | |
| ) | |
| MOUNTAIN VALLEY PIPELINE, LLC, ) | |
| ) | |
| Intervenor. ) | |
| _____ ) | |

## BRIEF OF *AMICI CURIAE* MEMBERS OF CONGRESS

## THE HONORABLE BOBBY SCOTT, GERRY CONNOLLY, DON BEYER, JENNIFER WEXTON, AND JENNIFER McCLELLAN

## IN SUPPORT OF PETITIONER

Cale Jaffe, Professor of Law, General Faculty
Environmental Law and Community Engagement Clinic
University of Virginia School of Law
580 Massie Road
Charlottesville, VA 22903
(434) 924-4776
cjaffe@law.virginia.edu

Dated: July 5, 2023

*Counsel for Amici Curiae Members of Congress*

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ................................................................................. ii

INTERESTS OF AMICI CURIAE ........................................................................1

ARGUMENT .........................................................................................................3

    I.     Public Policy Strongly Counsels In Favor Of Affording Petitioner A Fair Hearing On The Merits ...................................................................3

    II.    *Amici Curiae* Oppose Section 324's Interference With The Role Of The Judiciary ..........................................................................................7

CONCLUSION .....................................................................................................11

CERTIFICATE OF COMPLIANCE ...................................................................13

CERTIFICATE OF SERVICE .............................................................................14

# TABLE OF AUTHORITIES

## Cases

*Appalachian Voices v. United States Department of Interior*,
  25 F.4th 259 (4th Cir. 2022) ...................................................................... 10

*Bank Markazi v. Peterson*,
  578 U.S. 212 (2016) ..................................................................................... 9

*Hughes River Watershed Conservancy v. Glickman*,
  81 F.3d 437 (4th Cir. 1996) ......................................................................... 4

*Patchak v. Zinke*,
  138 S. Ct. 897 (2018) ............................................................................. 9, 11

*Sierra Club v. Federal Energy Regulation Commission*,
  867 F.3d 1357 (D.C. Cir. 2017) .................................................................. 6

*Sierra Club. v. United States Forest Service*,
  897 F.3d 582 (4th Cir. 2018) ................................................................. 6, 10

*United States v. Klein*,
  80 U.S. 128 (1871) ....................................................................................... 9

*Wild Virginia v. United States Forest Service*,
  24 F.4th 915 (4th Cir. 2022) .................................................................. 6, 10

## Statutes

5 U.S.C. § 706 .................................................................................................. 5

15 U.S.C. § 717 ................................................................................................ 5

16 U.S.C. § 1536 ............................................................................................ 10

16 U.S.C. § 1539 ............................................................................................ 10

16 U.S.C. § 1604 .............................................................................................. 5

30 U.S.C. § 185 ................................................................................................ 5

42 U.S.C. § 4321 .............................................................................................. 4

Section 324 from the Fiscal Responsibility Act of 2023, Pub. L. No. 118-5,
  137 Stat. 10 (2023) ............................................................................. passim

## Regulations

50 C.F.R. § 402.14 ............................................................................................ 10

## Legislative History Materials

115 Cong. Rec. 29,056 (Oct. 8, 1969) ................................................................ 4

169 Cong. Rec. H2676 (daily ed. May 31, 2023) ........................................... 2, 7

169 Cong. Rec. H2701-H2702 (daily ed. May 31, 2023) .................................. 8

169 Cong. Rec. S1879-S1880 (daily ed. June 1, 2023) ................................... 11

Clerk of the U.S. House of Representatives, *Roll Call 243, H.R. 3746, On Passage,* (May 31, 2023) ................................................................................. 2

## Other Authorities

A. Dan Tarlock, *The Story of Calvert Cliffs*, Environmental Law Stories (Foundation Press 2005) ............................... 4

Black's Law Dictionary, Sixth Ed. (West Pub. Co. 1990) ............................... 11

*Connolly Statement on Passage of Debt Limit Deal* (May 31, 2023) ................ 1

*Democracy and Distrust* (Harvard Univ. Press 1980) ....................................... 5

G. Edward White, *The Constitutional Journey of* Marbury v. Madison, 89 Va. L. Rev. 1463 (2003) ................................................................................ 6

Jean Ross, Senior Fellow, Economic Policy, *Default Would Have a Catastrophic Impact on the Economy,* The Center for American Progress (May 11, 2023) ........ 7

Josh Luckenbaugh, *Just In: Debt Default Would Be 'Catastrophic' for National Security, Service Chiefs Say,* National Defense (May 22, 2023) ............................ 8

Leonard E. Burman, *Defaulting On The Debt Could Be 'Catastrophic'–Or Worse,* Tax Policy Center: Urban Institute & Brookings Institution (May 11, 2023) ......... 8

*Scott Votes Against Debt Ceiling Agreement* (May 31, 2023) ............................. 2

*Virginia House Democrats Submit Amendment to Strip Mountain Valley Pipeline from Bipartisan Budget Agreement* (May 30, 2023) ........................................... 2, 3

*Wexton Statement on Voting to Pass Bipartisan Budget Agreement* (May 31, 2023) ............................................................................................................ 7

# INTERESTS OF *AMICI CURIAE*[1]

*Amici curiae,* the Honorable Robert C. Scott, Gerald E. Connolly, Donald S. Beyer, Jr., Jennifer Wexton, and Jennifer L. McClellan are members of Congress representing the Third, Eleventh, Eighth, Tenth, and Fourth Congressional Districts for the Commonwealth of Virginia, respectively. All *amici* also serve as members of the House Sustainable Energy and Environment Coalition; Mr. Connolly is Chair Emeritus of that Coalition and Mr. Beyer is currently serving as a Vice Chair. Collectively, *amici* have a strong interest in ensuring that their constituents' voices are heard with respect to the disproportionate harm that summary dismissal of these lawsuits would impose on Virginia families and communities. As Mr. Connolly stated:

> This is a frightening and unacceptable precedent to set, particularly on a project that will directly affect so many Virginia communities. Those Virginians, and the lawmakers who represent them, deserve more of a say in this decision than this deal affords them. To unilaterally approve … [the Mountain Valley Pipeline] project by fiat with no due process denies the people we serve any voice in their own communities' future.

Press Release, *Connolly Statement on Passage of Debt Limit Deal* (May 31, 2023), https://connolly.house.gov/news/documentsingle.aspx?DocumentID=4768.

---

[1] *Amici Curiae* have the consent of all parties for the filing of this brief pursuant to Fed. R. App. P. 29(a)(2). *Amici* certify that no person or entity, other than *amici* or their counsel, made a monetary contribution to the preparation or submission of this brief or authored it in whole or in part.

1

Thus, *amici* supported an amendment to strip Section 324 from the Fiscal Responsibility Act of 2023, Pub. L. No. 118-5, 137 Stat. 10 (2023), arguing that Congress should not "sidestep[] our nation's environmental laws and judicial review processes." Press Release, *Virginia House Democrats Submit Amendment to Strip Mountain Valley Pipeline from Bipartisan Budget Agreement* (May 30, 2023), https://mcclellan.house.gov/media/press-releases/virginia-house-democrats-submit-amendment-strip-mountain-valley-pipeline. *See also* 169 Cong. Rec. H2676 (daily ed. May 31, 2023) (referencing the amendment proposed by "Representatives McClellan, Beyer, and others in the Virginia delegation").

Only after *amici*'s efforts to pursue this amendment failed did Mr. Beyer, Ms. Wexton, and Ms. McClellan agree to vote for the broader bill. They concluded that anticipated harm to the global economy if the nation defaulted on its debt posed an unacceptable risk. In so voting, *amici* did not waive any right to continue raising objections to the Mountain Valley Pipeline ("MVP") approval process in all appropriate forums, including this litigation. Mr. Scott and Mr. Connolly voted against the Fiscal Responsibility Act as presented on the floor of the House of Representatives, in part because their objections to the MVP remained unaddressed. *See* Clerk of the U.S. House of Representatives, *Roll Call 243, H.R. 3746, On Passage,* (May 31, 2023), at https://clerk.house.gov/Votes/2023243; Press Release, *Scott Votes Against Debt Ceiling Agreement* (May 31, 2023) (opposing removal of

2

"judicial oversight" while litigation may be pending), https://bobbyscott.house.gov/media-center/press-releases/scott-votes-against-debt-ceiling-agreement.

## ARGUMENT

### I. Public Policy Strongly Counsels In Favor Of Affording Petitioner A Fair Hearing On The Merits.

The MVP is a proposed methane-gas project to expand fossil-fuel infrastructure through the heart of the Commonwealth. The MVP has drawn community objections because it would extend roughly 300 miles through Appalachia, damage hundreds of streams, harm several acres of wetlands, and require a taking of private property from many Virginia families. *See* Press Release, *Virginia House Democrats Submit Amendment to Strip Mountain Valley Pipeline from Bipartisan Budget Agreement* (May 30, 2023), *supra* p. 2. At a minimum, this Court should retain jurisdiction until it has heard Petitioner's claims on the merits. Short-circuiting ongoing litigation to greenlight the MVP—before a substantive hearing on Petitioner's new claims has even been afforded—is plainly contrary to the public interest.

Petitioner's claims under the National Environmental Policy Act ("NEPA"), for example, stand out as meriting this Court's close attention. Congress enacted NEPA more than half a century ago to create an environmental review process that ensures public involvement, requires thorough evaluation of project impacts, and

3

"promote[s] efforts which will prevent or eliminate damage to the environment…." 42 U.S.C. § 4321.

As the legislative history of the Act makes clear, a full airing of the public's concerns is at the core of what NEPA guarantees. Senator Henry "Scoop" Jackson, one of NEPA's chief architects, had grown concerned that "out of control mission agencies … were destroying scenic natural resources." A. Dan Tarlock, *The Story of* Calvert Cliffs: *A Court Construes the National Environmental Policy Act to Create a Powerful Cause of Action,* in ENVIRONMENTAL LAW STORIES, at 85 (Foundation Press 2005). As such, Senator Jackson spearheaded the drive to enact NEPA so that agencies would "no longer have an excuse for ignoring environmental values in the pursuit of narrower, more immediate, mission-oriented goals." 115 Cong. Rec. 29,056 (Oct. 8, 1969).

This purpose can be achieved only if federal courts stand ready to review agency actions that fall short of the Act's directives. And federal courts have long honored this public-engagement process as critical to NEPA implementation. *See Hughes River Watershed Conservancy v. Glickman*, 81 F.3d 437, 443 (4th Cir. 1996) (NEPA "ensures that relevant information about a proposed project will be made available to members of the public so that they may play a role in both the decisionmaking process and the implementation" of it.).

4

Similarly, Petitioner presents new claims under the National Forest Management Act, Natural Gas Act, and Mineral Leasing Act. *See* ECF No. 16 (Case No. 23-1592); ECF No. 15 (No. 23-1594). In coordination with NEPA and the Administrative Procedure Act, 5. U.S.C. § 706, these statutory regimes include important public participation processes. *See* 16 U.S.C. § 1604(d) (National Forest Management Act requiring "public participation in the development, review, and revision of land management plans"); 15 U.S.C. § 717b-1(a) (Natural Gas Act, mandating compliance "with pre-filing process required under [NEPA] prior to filing an application with the [Federal Energy Regulatory] Commission"); 30 U.S.C. § 185(h)(1) (nothing in the Mineral Leasing Act "shall be construed to amend, repeal, modify, or change in any way the requirements of section 102(2)(C) or any other provision of the National Environmental Policy Act of 1969.").

It has long been the judiciary's obligation to ensure that public involvement in these administrative law processes has been provided, and that the rights of affected individuals and communities are protected. The renowned constitutional law scholar John Hart Ely articulated "a participation-oriented, representation-reinforcing approach to judicial review." DEMOCRACY AND DISTRUST: A THEORY OF JUDICIAL REVIEW, at 87 (Harvard Univ. Press 1980). As later experts noted, Ely gained fame for his insightful defense on why "[c]ourts should carefully scrutinize, and potentially invalidate, the acts of legislatures only when the legislative process

5

itself restricted 'the channels of political change,' or when it openly discriminated against, or unduly disadvantaged, minorities." G. Edward White, *The Constitutional Journey of* Marbury v. Madison, 89 VA. L. REV. 1463, 1566 (2003).

Those conditions are undeniably present here, given that Section 324 of the Fiscal Responsibility Act was drafted expressly to close the courthouse door to marginalized communities who have successfully sought—and continue to seek—judicial review before this Court. *See Wild Virginia v. United States Forest Service,* 24 F.4th 915 (4th Cir. 2022) (finding that the U.S. Forest Service and Bureau of Land Management failed to consider community concerns related to sedimentation and erosion); *Sierra Club v. United States Forest Service*, 897 F.3d 582, 605-06 (4th Cir. 2018) (remanding various analyses to the Forest Service and Bureau of Land Management to comply with NEPA and other laws).

Although the "role of the courts in reviewing agency compliance with NEPA is … limited," it remains an essential component of our constitutional system. *Sierra Club v. Federal Energy Regulation Commission,* 867 F.3d 1357, 1367 (D.C. Cir. 2017). Only the judiciary can "ensure that the agency has adequately considered and disclosed the environmental impact of its actions and that its decision is not arbitrary or capricious." *Id.* at 1367-68 (internal citations omitted). Notwithstanding the language of Section 324 (discussed below), this Court has a solemn obligation to afford Petitioner a full hearing on the merits of their claims. Respondents' and

6

Intervenor's motions should be denied as they subvert a critical forum for public engagement on issues of greatest concern.

## II. *Amici Curiae* Oppose Section 324's Interference With The Role Of The Judiciary.

*Amici curiae* opposed inclusion of Section 324 in the Fiscal Responsibility Act of 2023 because it ran roughshod over access to Article III courts in pending cases for the most vulnerable of Virginia citizens—including low-income, elderly, and Indigenous populations. *See* 169 Cong. Rec. H2676 (daily ed. May 31, 2023) (Rep. Steve Cohen (TN-09): "I joined Representatives McClellan, Beyer, and others in the Virginia delegation in support of an amendment offered to remove that language [on the MVP], but it wasn't allowed to be voted upon."); Press Release, *Wexton Statement on Voting to Pass Bipartisan Budget Agreement* (May 31, 2023), https://wexton.house.gov/news/documentsingle.aspx?DocumentID=832.

Mr. Beyer, Ms. Wexton, and Ms. McClellan nonetheless voted in favor of legislation to raise the debt ceiling as the only available means to avoid a default that would have been catastrophic—and that is an understatement—on a global level. *See* Jean Ross, Senior Fellow, Economic Policy, *Default Would Have a Catastrophic Impact on the Economy*, THE CENTER FOR AMERICAN PROGRESS (May 11, 2023) (noting Moody's Analytics' warning that "a default lasting even a few weeks could cause a recession comparable to that during the global financial crisis, resulting in the loss of nearly 6 million jobs and a stock market fall off of almost one-third…."),

7

https://www.americanprogress.org/article/default-would-have-a-catastrophic-impact-on-the-economy/; Josh Luckenbaugh, *Just In: Debt Default Would Be 'Catastrophic' for National Security, Service Chiefs Say*, NATIONAL DEFENSE (May 22, 2023) ("The U.S. military's service chiefs warned of devastating consequences to their ability to defend the nation if Congress fails to resolve the looming debt ceiling crisis."), https://www.nationaldefensemagazine.org/articles/2023/5/22/debt-default-would-be-catastrophic-for-us-military-service-chiefs-say; Leonard E. Burman, *Defaulting On The Debt Could Be 'Catastrophic'–Or Worse*, TAX POLICY CENTER: URBAN INSTITUTE & BROOKINGS INSTITUTION (May 11, 2023), https://www.taxpolicycenter.org/taxvox/defaulting-debt-could-be-catastrophic-or-worse.

Votes for the broader bill should not be interpreted as endorsements for Section 324—far from it. All members of *amici curiae* vocally supported a "clean" vote to raise the debt ceiling and strenuously opposed efforts to hold the national economy hostage to secure passage of measures like Section 324. *See, e.g.,* 169 Cong. Rec. H2701-H2702 (daily ed. May 31, 2023) (Mr. Beyer: "I would have much rather voted for a clean debt limit increase as we did three times under the previous President."). Section 324 bears no relationship to matters of fiscal prudence and responsible management of the country's debt obligations. Simply put, Section 324 should not have been included in the Fiscal Responsibility Act of 2023, and *amici*

8

assert their obligations on behalf of their constituents to continue raising strong objections to Section 324 in all appropriate forums.

Most obviously, Section 324 runs counter to the constitutional separation of powers as it was drafted with the specific intent to derail ongoing litigation. *See Patchak v. Zinke,* 138 S.Ct. 897, 917 (2018) (while Congress may enact "statutes that prospectively govern[] an open-ended class of disputes and [leave] the courts to apply any new legal standard in the first instance," it cannot "dictat[e] a particular outcome or … singl[e] out a particular party") (Roberts, C.J., dissenting from the judgment of the Court). *See also Bank Markazi v. Peterson,* 578 U.S. 212, 225 (2016) ("Congress, no doubt, 'may not usurp a court's power to interpret and apply the law to the [circumstances] before it…") (internal citations omitted) (alternations in original); *United States v. Klein,* 80 U.S. 128, 145 (1871) (striking down statutory language that "does not intend to withhold appellate jurisdiction except as a means to an end"). Although a four-Justice plurality of the *Patchak* Court voiced acquiescence to "jurisdiction-stripping statute[s]" on the theory that Congress's "'control over the jurisdiction of the federal courts' is 'plenary.'" *Patchak v. Zinke,* 138 S.Ct. 897, 906 (2018), Section 324 goes much further than even the highly controversial legislation considered in that case.

Section 324 improperly attempts to "direct the result" of a particular case "without altering the legal standards" more generally. *Id*. at 909. The evidence of

9

this improper action is plain in the language of the statute. Section 324(c)(1) purports to approve all "biological opinions" and "incidental take statements"—terms that come directly from the law and regulations on the Endangered Species Act. *See* 50 C.F.R. § 402.14 (outlining when the Fish and Wildlife Service should prepare a "biological opinion" and establishing standards for issuance of an "incidental take statement"); 16 U.S.C. § 1536, Endangered Species Act § 7 (directing the preparation of biological opinions and incidental take statements); 16 U.S.C. § 1539, Endangered Species Act § 10 (incidental take permits). Thus, Section 324 does not create new standards for courts to apply. Instead, it directs the resolution of claims that have already been brought under other law. *See, e.g., Appalachian Voices v. United States Department of Interior,* 25 F.4th 259, 271 (4th Cir. 2022) (finding previously issued "biological opinions" for the MVP to be "inadequate" and based on conclusions that were "arbitrary and capricious").

Indeed, the success that Petitioner and similarly situated community groups have had in previous cases in this Court only strengthens the perception that the Intervenor has grown frustrated with litigation-related defeats and has turned to Section 324 to select a different prevailing party. *See Wild Virginia,* 24 F.4th at 932; *Sierra Club*, 897 F.3d at 596, 605-06; *Appalachian Voices,* 25 F.4th at 283. The constitutional separation of powers bars such as strategy. As Senator Tim Kaine explained:

10

> The provision in this bill … is a rebuke of the Fourth Circuit of the U.S. Court of Appeals… For 18 years, I tried cases in the Fourth Circuit, and I won some, and I lost some… Never once did I tell a client after a loss: What we need to do is go to Congress and take this case away from the Fourth Circuit and put it in a court that is more likely to be favorable.

169 Cong. Rec. S1879-S1880 (daily ed. June 1, 2023).

Especially telling is Section 324(c)(1)'s use of the term "ratifies." The legal definition of "ratification" begins with "the confirmation of a previous act…" BLACK'S LAW DICTIONARY, SIXTH EDITION, at 1261 (West Pub. Co. 1990). Ratification of specific, agency decisions that are actively being challenged in ongoing cases is a uniquely judicial action that Congress is barred from undertaking. Section 324 thus fails to pass constitutional muster as it "target[s] a single party for adverse treatment and direct[s] the precise disposition of his pending case." *Patchak,* 138 S.Ct. at 917 (Roberts, C.J., dissenting from the judgment of the Court, with whom Kennedy and Gorsuch, J.J., join).

## **CONCLUSION**

For the foregoing reasons, *amici curiae,* members of Congress representing the Third, Eleventh, Eighth, Tenth, and Fourth Congressional Districts for Commonwealth of Virginia, request this Court deny the pending motions from Respondents' and Intervenor and allow Petitioner's claims to proceed until they can be afforded a substantive hearing on the merits. Our constituents deserve to have their day in court on the new claims they have raised in the underlying petitions.

**DATED: July 5, 2023**

Respectfully submitted,

*/s/ Cale Jaffe*

Cale Jaffe, Professor of Law, General Faculty
Environmental Law and Community Engagement Clinic
University of Virginia School of Law
580 Massie Road
Charlottesville, VA 22903
Tel: (434) 924-4776
Email: cjaffe@law.virginia.edu

*Counsel for Amici Curiae Members of Congress*

12

## CERTIFICATE OF COMPLIANCE

1. The foregoing brief has been prepared in a proportionally spaced typeface using Microsoft Word, Times New Roman, 14 point.

2. Exclusive of the table of contents; table of citations; certificate of compliance and the certificate of service, the foregoing brief contains <u>2,521</u> words.

3. I understand that a material misrepresentation can result in the Court striking the brief and imposing sanctions. If the Court so directs, I will provide an electronic version of the brief with the word or line printout.

Dated: July 5, 2023                                  */s/ Cale Jaffe*
                                                     Cale Jaffe

## **CERTIFICATE OF SERVICE**

  I hereby certify that on this 5th day of July, 2023, I electronically filed with the Clerk of the United States Court of Appeals for the Fourth Circuit via the CM/ECF System the foregoing Brief of *Amici Curiae*. All participants in the case are registered CM/ECF users, and service will be accomplished by the CM/ECF system. *See* Fed. R. App. P. Local Rule 25(a)(4).

Dated: July 5, 2023                                    */s/ Cale Jaffe*
                       Cale Jaffe