Nos. 23-1592(L), 23-1594

---

IN THE UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

---

THE WILDERNESS SOCIETY,
Petitioner,

v.

UNITED STATES FOREST SERVICE, ET AL.,
Respondents,

and

MOUNTAIN VALLEY PIPELINE, LLC,
Intervenor.

**MOUNTAIN VALLEY PIPELINE, LLC'S REPLY IN SUPPORT OF ITS
MOTION TO DISMISS FOR LACK OF JURISDICTION OR, IN THE
<u>ALTERNATIVE, FOR SUMMARY DENIAL</u>**

Congress passed the Fiscal Responsibility Act (Act) with strong bipartisan support in both houses of Congress.  Two days later, President Biden signed the Act into law, *see* Fiscal Responsibility Act of 2023, Pub. L. No. 118-5, 137 Stat. 10 (2023), observing that "'[n]o one got everything they wanted, but the American people got what they needed.'"[1]  One product of this quintessentially democratic process—Section 324—compels dismissal of these consolidated Petitions for Review of Records of Decision for the

---

[1] Michael D. Shear, *Biden Signs Fiscal Responsibility Act in End to Debt Limit Crisis*, THE NEW YORK TIMES (June 3, 2023), https://tinyurl.com/492ty23d.

Mountain Valley Pipeline Project (Project) issued by the United States Forest Service (Forest Service) and the Bureau of Land Management (BLM).

Petitioner opposes dismissal solely because it says Section 324 is unconstitutional. But this is not the Court to hear that claim. Congress, in plain terms, gave the D.C. Circuit "exclusive jurisdiction" to hear such claims. Act §324(e)(2). Congress' message was crystal clear: if you want to challenge Section 324, you must do so in the D.C. Circuit. This Court thus lacks jurisdiction to consider Petitioner's constitutional challenges, and the motions to dismiss must be granted.

But even if the Court disregards the Act's channeling of constitutional challenges to the D.C. Circuit, and reaches the merits of Petitioner's constitutional claims, those claims fail. Congress does not improperly trench on the judicial power when it provides new law for courts to apply to a class of pending cases, even if the law effectively ensures that one side will win. *Patchak v. Zinke*, 138 S. Ct. 897, 905 (2018) (plurality op.); *Bank Markazi v. Peterson*, 578 U.S. 212, 215 (2016); *Plaut v. Spendthrift Farm, Inc.*, 514 U.S. 211, 218 (1995); *Robertson v. Seattle Audubon Soc.*, 503 U.S. 429, 441 (1992). That is what happened here. Petitioner cites no case from *any court* in the past 150 years ruling in favor of its separation-of-powers theory. Instead, its challenge rests entirely on *United States v. Klein*, 80 U.S. 128, 146 (1871), a decision that

2

has variously been described as "deeply puzzling," "delphic," and "baffl[ing]," *Bank Markazi*, 578 U.S. at 226 & n.18, and whose "exact meaning is far from clear," *National Coalition to Save Our Mall v. Norton*, 269 F.3d 1092, 1096 (D.C. Cir. 2001). *Klein* is readily distinguishable here, and a fair reading of the Act easily defeats Petitioner's assertions that Section 324 attempts to compel the outcome of these petitions—filed on the same day Congress passed the Act—under old law. Any other result would depart substantially from an unbroken line of consistent precedent in the Supreme Court and this Court.

## ARGUMENT

### I.    This Court lacks jurisdiction to decide the constitutionality of the Act.

Petitioner responds to the motions to dismiss by contending (at 1–2, 8–23) that the Act is unconstitutional. But this Court is not the appropriate forum for those claims.

In stripping all courts of jurisdiction to review "any action" related to the Project—including in "any lawsuit pending in a court"—Congress made clear that the D.C. Circuit "shall have original and exclusive jurisdiction over any claim alleging the invalidity of this section or that an action is beyond the scope of authority conferred by [Section 324]." Act §324(e). Because Petitioner's constitutional challenges plainly constitute "claim[s] alleging the invalidity of this section," the D.C. Circuit—rather than this Court—has

"exclusive" jurisdiction to decide them, and this Court's jurisdictional inquiry must proceed no further than applying Section 324(e)(1) to the facts of this case. *See, e.g.*, *Flores-Garza v. I.N.S.*, 328 F.3d 797, 802–03 (5th Cir. 2003) (explaining that the "inquiry into the scope of [] jurisdiction must begin and end" with undisputed facts showing that "jurisdiction-stripping provisions … clearly apply").

Petitioner (at 6–7) resists this straightforward conclusion by isolating the term "claim," and arguing that Section 324(e)(2) addresses only "cause[s] of action" in "new cases." But statutory language "is not read in isolation, rather '[i]t is a fundamental canon of statutory construction that the words of a statute must be read in their context and with a view to their place in the overall statutory scheme.'" *Lynch v. Jackson*, 853 F.3d 116, 121 (4th Cir. 2017) (citation omitted). Section 324 first withdraws jurisdiction from *all courts* to review any action related to the Project, then provides an "exclusive" outlet for challenges to the legislation itself in *a single court*. This sequencing demonstrates that Congress foresaw Petitioner's attempts to litigate the constitutionality of Section 324—including in "any lawsuit pending in a court"—and deliberately limited jurisdiction for such challenges to the D.C. Circuit.

Section 324(e)(2) also fits into the "overall statutory scheme" of "[e]xpediting" and ensuring the "timely completion of construction and operation of the Mountain Valley Pipeline," Act §324(d), 324(b), by consolidating and simplifying review of the legislation in a single forum. Petitioner's interpretation, in contrast, would multiply the litigation of constitutional issues in any case in which challengers put a court's jurisdiction into play, directly contradicting the Act's overarching goal.  It also would improperly deprive Section 324(e)(2) of meaningful effect because this Court's obligation to assure its jurisdiction over pending cases would (under Petitioner's reading) immediately tee up constitutional challenges here, not in the D.C. Circuit.  *Cf. Scott v. United States*, 328 F.3d 132, 139 (4th Cir. 2023) (courts should "avoid any interpretation ... render[ing] statutory terms meaningless").

Petitioner's equation of the word "claim" with "cause of action" also violates the principle that courts should give statutory language its "'ordinary, contemporary, common meaning.'"  *Stewart v. Iancu*, 912 F.3d 693, 702 (4th Cir. 2019) (citation omitted).  Congress nowhere signaled an intent to restrict the word "claim" in Section 324(e)(2) to a "legal term of art," as Petitioner contends (at 6).  Tellingly, Petitioner cites *the fourth listed definition* for "claim" in Black's Law Dictionary for the proposition that it must mean "cause of

5

action." *CLAIM*, BLACK'S LAW DICTIONARY (11th ed. 2019). But the *first* definition—"[a] statement that something yet to be proved is true"—hews much closer to the ordinary and common meaning of "claim." *Id.* This more common definition easily covers Petitioner's constitutional challenges.

Petitioner's attempts (at 7–8) to draw temporal distinctions from the language in Section 324(e)(2) likewise fail. Like other analogous jurisdictional provisions, *see, e.g.*, 15 U.S.C. § 717r(d)(1), Section 324(e)(2)'s use of the phrase "*original* and exclusive jurisdiction" merely signifies that the D.C. Circuit can decide the constitutionality of the section in the first instance, without waiting for a district court to first rule on the issue. And Section 324(e)(2)'s prospective "shall have" language does not convert it into a provision addressing only future cases, especially because no party could challenge the Act—even in a pending case—until it became effective. Petitioner's argument to the contrary stems from its mistaken collapsing of the term "claim" into "cause of action."

In all events, even under Petitioner's understanding of the word "claim," its claim challenging the Records of Decision necessarily "alleg[es] the invalidity of" Section 324. As in all cases, an essential element of Petitioner's claim against the Forest Service and BLM—one Petitioner bears the burden of affirmatively establishing—is that this Court has subject-matter jurisdiction.

*Sierra Club v. U.S. Army Corps of Eng'rs*, 981 F.3d 251, 257 (4th Cir. 2020) (per curiam).[2]

## II.   The Act is constitutional.

Even accepting Petitioner's strained reading of Section 324(e)(2) in contravention of Congress' unmistakable intent, Petitioner's constitutional challenges lack merit.  Petitioner claims (at 8–22) that the Act violates the separation of powers by dictating the outcome of this case.  But an unbroken line of Supreme Court majority decisions "make clear" that Congress "may amend the law and make the change applicable to pending cases, even when the amendment is outcome determinative."  *Bank Markazi*, 578 U.S. at 215; *see also Plaut*, 514 U.S. at 218; *Robertson*, 503 U.S. at 441.  That is what Congress did here.

Section 324 amends the law in two principal ways.  First, it "ratifies and approves" all authorizations for the Project, and directs the relevant agencies to "continue to maintain" those authorizations.  Act §324(c).  Second, it channels all disputes over the lawfulness of Section 324 and all questions about whether a particular agency action falls within the scope of Section 324 to the

---

[2] Notably, several of Petitioner's fellow Project opponents elected not to present their constitutional challenges in the D.C. Circuit when given a clear opportunity to do so.  *See* Joint Resp. in Opp'n to Mot. for Vol. Dismissal, *Appalachian Voices v. FERC*, No. 22-1330 (D.C. Cir. July 3, 2023) (Doc. 2006275).

D.C. Circuit, while stripping all courts of jurisdiction to hear pending and future cases challenging the lawfulness of these agency authorizations. *Id.* §324(e). Both amendments explicitly apply "[n]otwithstanding any other provision of law," *id.* §324(c), (e)(1), and both "supersede[] any other provision of law," *id.* §324(f). Because these provisions "change[] the law," rather than "'compel[] … findings or results under old law,'" they do not impermissibly infringe on the judicial power. *Patchak*, 138 S. Ct. at 905 (plurality op.) (citing *Plaut*, 514 U.S. at 218 and *Robertson*, 503 U.S. at 438).

Take Section 324(c)'s ratification and approval of existing authorizations first. The Act's ratification of the Forest Service and BLM authorizations changes the underlying environmental law. Instead of directing courts to affirm those authorizations under old law—by dictating that they satisfy the requirements of the National Forest Management Act (NFMA), the Mineral Leasing Act (MLA), and the Administrative Procedure Act, for example—the Act supplies a new standard for courts to apply. Indeed, Congress clarified that the provision "supersedes any other provision of law," §324(f), and applies "[n]otwithstanding any other provision of law," §324(c). Just like the provision supplanting timber harvesting restraints in *Robertson*, 503 U.S. at 434–35, and the standard clarifying when victims of Iran-sponsored terrorist attacks could execute against certain Iranian assets in *Bank Markazi*, 578 U.S.

8

at 231–32, Section 324(c) permissibly "directs courts to apply a new legal standard to undisputed facts," *id.* at 230.

Petitioner's only response (at 14) is that Section 324 "leave[s] no questions of law or fact to adjudicate." But that is simply not true. Courts clearly must apply Section 324(c) and (e)(1) before resolving any particular challenge to an authorization for the Project. In doing so, they must determine whether the authorization falls within the list of approvals specified therein. And if the authorization at issue is not specifically listed, they must determine whether the approval is "necessary for the construction and initial operation at full capacity of the [Project]." Act §324(c), (e). The standard may not be "difficult to interpret or apply," *Patchak*, 138 S. Ct. at 910 (plurality op.), but the relevant question is not whether the standard leaves "too little for courts to do," but whether it "attempt[s] to direct the result without altering the [applicable] legal standards." *Bank Markazi*, 578 U.S. at 228.

Section 324(c) unquestionably alters the legal standard and thus sits comfortably with a consistent line of precedent from other circuits upholding similar legislation. *See, e.g.*, *Nat'l Coal. to Save Our Mall*, 269 F.3d at 1093–94, 1097 (upholding legislation enacted during pendency of litigation challenging various permits issued for construction of memorial on the National Mall, where Congress directed project to proceed "[n]otwithstanding any other

9

provision of law"); *Friends of Animals v. Jewell*, 824 F.3d 1033, 1045 (D.C. Cir. 2016) (upholding statute directing Secretary of Interior to take particular action "'without regard to any other provision of statute or regulation that applies to issuance of such rule'"); *Apache Survival Coal. v. United States*, 21 F.3d 895, 901–04 (9th Cir. 1994) (upholding statute that "substituted preexisting legal standards that governed a particular project … with the new standards").

The validity of Section 324(c) alone suffices to compel dismissal here. But even if it did not, Section 324(e)(1) independently and permissibly amends the law applicable to this case, because "[s]tatutes that strip jurisdiction 'chang[e] the law' for the purpose of Article III." *Patchak*, 138 S. Ct. at 906–07 (plurality op.) (citing *Plaut*, 514 U.S. at 218).

Petitioner (at 16–22) asks this Court to brush aside prior Supreme Court majority opinions as well as the *Patchak* plurality—along with all of the precedent it relies on—in favor of stray passages from *Klein,* 80 U.S. at 146, an idiosyncratic 152-year-old decision that court after court has subsequently clarified and narrowed. *See, e.g.*, *Bank Markazi*, 578 U.S. at 226–29 ("More recent decisions … have made it clear that *Klein* does not inhibit Congress from 'amend[ing] applicable law.' … Section 8772, we hold, did just that." (citations omitted)); *Nat'l Coal. to Save Our Mall*, 269 F.3d at 1095–97 (holding that "passages [from *Klein*] cannot be read as a prohibition against Congress's

changing the rule of decision in a pending case, or (more narrowly) changing the rule to assure a pro-government outcome").

This case bears no resemblance to *Klein*. That "deeply puzzling decision" held that a statute impinged on the judicial power "because it attempted to direct the result without altering the legal standards governing the effect of a pardon—standards Congress was powerless to prescribe." *Bank Markazi*, 578 U.S. at 226, 228. But in contrast to the Executive's exclusive pardon power in *Klein*, Congress plainly has full authority to approve and ratify permits issued under applicable federal laws like the NFMA and the MLA. *See Patchak*, 138 S. Ct. at 910 (plurality op.).

That *Klein* fails to undermine the constitutionality of the Act is highlighted by this Court's own precedent. In *United States v. Brainer*, this Court limited *Klein* because it found "troublesome" the case's "sweeping dicta casting doubt on Congress' power to 'prescribe rules of decision to the judicial department of the government in cases pending before it.'" 691 F.2d 691, 695 (4th Cir. 1982) (citation omitted). And more recent decisions both repeat *Brainer's* narrowing of *Klein*, *Ameur v. Gates*, 759 F.3d 317, 327 (4th Cir. 2014), and affirm that "Congress does not mandate a rule of decision when it amends the law underlying a pending case," *Plyler v. Moore*, 100 F.3d 365, 372 (4th Cir. 1996) (discussing *Klein*). So even if *Brainer*'s precise cabining of *Klein* goes

11

further than a hypothetical discussed in a later Supreme Court opinion, as

Petitioner contends (at 9–10 n.4)—and any tension between the two is far from

clear—*Brainer*'s reasoning is fully consistent with the core holding in case after

Supreme Court case that "Congress may … direct courts to apply newly

enacted, outcome-altering legislation in pending civil cases." *Bank Markazi*,

578 U.S. at 229 (collecting cases).

Finally, Petitioner's arguments against mootness (at 9–16) depend

completely on their flawed constitutional challenges, and thus fail for the

reasons given above. They also squarely conflict with *Friends of the Earth v.

Haaland*, No. 22-5036, 2023 WL 3144203 (D.C. Cir. Apr. 28, 2023) (per

curiam). Petitioner attempts (at 15–16) to distinguish *Friends of the Earth*

because the Forest Service and BLM authorizations were issued before the Act

passed, and Congress did not compel them in the first instance. That is a

distinction without a difference, especially given that Congress instructed the

agencies to "continue to maintain" the decisions. Act §324(c)(2). This Court

would run afoul of the text and purpose of Section 324 if it purported to take

any action with respect to the Forest Service and BLM authorizations that

would interfere with the timely construction and operation of the Project.

## <u>CONCLUSION</u>

The Court should dismiss the petition for lack of jurisdiction or, in the alternative, deny it summarily.

Dated:  July 10, 2023

Respectfully submitted,

/s/ George P. Sibley, III
George P. Sibley, III
J. Pierce Lamberson
Hunton Andrews Kurth LLP
951 E. Byrd St.
Richmond, VA 23219
Telephone:  (804) 788-8716
Facsimile:  (804) 343-4733
gsibley@hunton.com
plamberson@hunton.com

Donald B. Verrilli, Jr.
Ginger D. Anders
Helen E. White
Munger, Tolles & Olson LLP
601 Massachusetts Ave. NM
Suite 500E
Washington, DC 20001-5369
Telephone:  (202) 220-1100
Facsimile:  (202) 220-2300
Donald.Verrilli@mto.com
Ginger.Anders@mto.com
Helen.White@mto.com

*Counsel for Mountain Valley Pipeline, LLC*

**CERTIFICATE OF COMPLIANCE**

I hereby certify that this reply complies with the type-face requirements of Fed. R. App. P. 32(a)(5) and the type-volume limitations of Fed. R. App. P. 27(d)(2)(A).  This reply contains 2,591 words, excluding the parts of the reply excluded by Fed. R. App. P. 27(d)(2) and 32(f).

/s/ George P. Sibley, III
*Counsel for Mountain Valley Pipeline, LLC*

## CERTIFICATE OF SERVICE

I hereby certify that on July 10, 2023, I electronically filed the foregoing **Reply in Support of Motion to Dismiss Petition for Lack of Jurisdiction or, In the Alternative, for Summary Denial** with the Clerk of Court using the CM/ECF System which will automatically send e-mail notification of such filing to all counsel of record.


 /s/ George P. Sibley, III

*Counsel for Mountain Valley Pipeline, LLC*