No. 23-1592 (L)
(consolidated with No. 23-1594)

---

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

---

THE WILDERNESS SOCIETY
*Petitioner*,

v.

UNITED STATES FOREST SERVICE, et al.,
*Respondents*,

&

MOUNTAIN VALLEY PIPELINE, LLC,
*Intervenor*

---

## MOTION OF FEDERAL COURTS SCHOLARS FOR LEAVE TO FILE A BRIEF AS *AMICI CURIAE* IN SUPPORT OF PETITIONER'S OPPOSITION TO FEDERAL RESPONDENTS' MOTION TO DISMISS AND INTERVENOR'S MOTION TO DISMISS OR, IN THE ALTERNATIVE, FOR SUMMARY DENIAL

---

LAYLA HUGHES
909 GOLDBELT AVE
JUNEAU, AK 99801
TELEPHONE: +1 303 518-4211

*Counsel for Amici Curiae*

July 10, 2023

---

0

## ARGUMENT

Professors William D. Araiza, Erwin Chemerinsky, Caprice Roberts, and Howard M. Wasserman (collectively *amici*) are federal courts scholars who respectfully move under Rule 29(a) of the Federal Rules of Appellate Procedure for leave to file a brief as *amici curiae* in support of Petitioner's opposition to federal respondents' motion to dismiss and intervenor's motion to dismiss or, in the alternative, for summary denial.

*Amici* sought and received consent of all parties under Federal Rule of Appellate Procedure 29(a)(2). On July 5, 2023, *amici* filed a brief pursuant to Federal Rule of Appellate Procedure 29. On July 7, 2023, this Court issued a Docket Correction Notice requiring filing of a motion for leave to file the proposed *amicus* brief.

*Amici* are legal scholars who teach and write in the fields of constitutional law and federal jurisdiction, with particular attention to the separation of powers between the political branches and the judiciary. *Amici* come together in this case out of a shared belief that Section 324 of the Fiscal Responsibility Act of 2023 is in direct and irreconcilable tension with core separation-of-powers principles, including those articulated in *United States v. Klein*, 80 U.S. (13 Wall.) 128 (1872). *Amici* offer the Court a unique perspective on this important constitutional issue.

1

## CONCLUSION

For the foregoing reasons, *amici* respectfully request that the Court grant their motion for leave and accept their concurrently filed brief or, in the alternative, their brief filed on July 5, 2023.

DATE: July 10, 2023

Respectfully submitted,

*/s/ Layla Hughes*

Layla Hughes
909 Goldbelt Ave
Juneau, AK 99801
Telephone: +1 303 518-4211
Email: laylahughes@laylahughes.com

*Counsel for Amici Curiae*

2

# CERTIFICATE OF COMPLIANCE

I certify that this brief complies with the type-volume limitations of Fed. R. App. P. 27(d)(2) and 32(c)(1) because it contains 241 words, excluding the parts of the motion exempted by Fed. R. App. P. 32(f).

I further certify that this brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionately spaced typeface using Microsoft Word in 14-point Times New Roman font.

DATE: July 10, 2023

Respectfully submitted,

*/s/ Layla Hughes*
Layla Hughes
909 Goldbelt Ave
Juneau, AK 99801
Telephone: +1 303 518-4211
Email: laylahughes@laylahughes.com

## CERTIFICATE OF SERVICE

I certify that on July 10, 2023, I electronically filed the foregoing with the

Clerk of Court for the United States Court of Appeals for the Fourth Circuit by

using the appellate CM/ECF system, which will automatically send e-mail

notification of such filing to all counsel of record.

*/s/ Layla Hughes*

Layla Hughes
909 Goldbelt Ave
Juneau, AK 99801
Telephone: +1 303 518-4211
Email: laylahughes@laylahughes.com

No. 23-1592 (L)
(consolidated with No. 23-1594)

---

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FOURTH CIRCUIT

---

THE WILDERNESS SOCIETY
*Petitioner*,

v.

UNITED STATES FOREST SERVICE, et al.,
*Respondents*,

&

MOUNTAIN VALLEY PIPELINE, LLC,
*Intervenor*

---

**BRIEF OF FEDERAL COURTS SCHOLARS AS *AMICI CURIAE* IN SUPPORT OF PETITIONER'S OPPOSITION TO FEDERAL RESPONDENTS' MOTION TO DISMISS AND INTERVENOR'S MOTION TO DISMISS OR, IN THE ALTERNATIVE, FOR SUMMARY DENIAL**

---

LAYLA HUGHES
909 GOLDBELT AVE
JUNEAU, AK 99801
TELEPHONE: +1 303 518-4211

*Counsel for Amici Curiae*

July 10, 2023

---

# **TABLE OF CONTENTS**

TABLE OF CONTENTS…..........................................................i

TABLE OF AUTHORITIES……..................................................ii

RULE 29 STATEMENTS……………………………………………..1

ARGUMENT ......................................................................2

    I.    An Act of Congress Violates the Separation of Powers When It Directs the Result in Pending Litigation Without Amending Substantive Law…………………………………………………2

        A.    *Klein*'s progeny affirm its core holding prohibiting Congress from dictating who prevails in pending cases without amending underlying law…………………………..3

        B.    Principles from the *Klein* cases reveal whether a statute violates the separation of powers………………………8

    II.    The Fiscal Responsibility Act Violates *Klein*…………………………9

CONCLUSION....................................................13

APPENDIX: LIST OF AMICI.............................................A-1

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Arlington v. FCC,*
    569 U.S. 290 (2013)…………………………………………………...11

*A.T. Massey Coal Co. v. Massanari,*
    305 F.3d 226 (4th Cir. 2002)……………………………………….....7

*Bank Markazi v. Peterson,*
    578 U.S. 212 (2016)………………………………….2, 3, 5, 6, 8, 9, 10, 12

*Fletcher v. Peck,*
    10 U.S. (6 Cranch) 87 (1810)…………………………………………...3

*Marbury v. Madison,*
    5 U.S. (1 Cranch) 137 (1803)…………………………………..…...2

*Moore v. Harper,*
    No. 21-1271, 600 U.S. __ (2023)…………………………..……..…...2

*Patchak v. Zinke,*
    138 S. Ct. 897 (2018)………………………………….2, 3, 6, 7, 8, 9, 10

*Pennsylvania v. Wheeling & Belmont Bridge Co.,*
    59 U.S. (18 How.) 421 (1855)………………………………………….4

*Robertson v. Seattle Audubon Soc'y,*
    503 U.S. 429 (1992)…………………………………………………3, 5, 8

*United States v. Klein,*
    80 U.S. (13 Wall.) 128 (1871)…………………1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, 12

*United States v. Schooner Peggy,*
    5 U.S. (1 Cranch) 103 (1801)…..…………...…….……………….....4

*United States v. Sioux Nation of Indians,*
    448 U.S. 371 (1980)……………………...…….……………..……...4

ii

# TABLE OF AUTHORITIES
## (continued)

**Page(s)**

**Statutes**

Act of July 12, 1870, § 1, 16 Stat. 230……………………………………..…………3

Fiscal Responsibility Act of 2023

Pub. L. No. 118-5, § 324, 137 Stat. 10 (2023)…………….....................2, 3, 9, 12

Pub. L. No. 118-5, § 324(c)(1), 137 Stat. 10 (2023)………...…….....................10

Pub. L. No. 118-5, § 324(c)(2), 137 Stat. 10 (2023)……………….................10

Pub. L. No. 118-5, § 324(d)(1), 137 Stat. 10 (2023)………………...........10, 11

Pub. L. No. 118-5, § 324(f), 137 Stat. 10 (2023)……………….................10

**Rules**

Fed. R. App. P. 29(a)(2) ........................................................................ 1

Fed. R. App. P. 29(a)(4)(E)................................................................... 1

**Other Authorities**

Evan C. Zoldan, *The Vanishing Core of Judicial Independence*,
    21 Nev. L. J. 531 (2021)……………..…………………………………4, 8

**RULE 29 STATEMENTS**

1.      *Amici* are constitutional law and federal jurisdiction scholars with expertise in the separation of powers.

2.      *Amici* file the brief with consent of all parties under Fed. R. App. P. 29(a)(2).

3.      No party or its counsel, or any other person, other than *amici* and their counsel, authored this brief in whole or in part, or contributed money that was intended to fund preparing or submitting this brief. *See* Fed. R. App. P. 29(a)(4)(E).

USCA4 Appeal: 23-1592      Doc: 44      Filed: 07/10/2023      Pg: 11 of 25

**ARGUMENT**

I.  **An Act of Congress Violates the Separation of Powers When It Directs the Result in Pending Litigation Without Amending Substantive Law.**

If the constitutional structure separating the legislative power from the judicial is to mean something, it is that there is a line between making laws and applying them. *Bank Markazi v. Peterson*, 578 U.S. 212, 225 (2016) ("Congress, no doubt, may not usurp a court's power to interpret and apply the law to . . . particular cases[.]" (citation and internal quotation marks omitted)). It is the Judiciary's role—not Congress's—to say where that line is. *Moore v. Harper*, No. 21-1271, 600 U.S. __ (2023), slip op. at 12 (citing *Marbury v. Madison*, 5 U.S. (1 Cranch) 137, 177 (1803)).

The dispute over whether Section 324 of the Fiscal Responsibility Act of 2023 transgresses this Court's constitutional power thus matters a great deal, for "however difficult it may be to discern the line between the Legislative and Judicial Branches, the entire constitutional enterprise depends on there being such a line." *Bank Markazi*, 578 U.S. at 249 (Roberts, C.J., dissenting).

Cutting through the fog from *United States v. Klein*, 80 U.S. (13 Wall.) 128 (1871), to *Patchak v. Zinke*, 138 S. Ct. 897 (2018), is the core principle that Congress may not reach into a pending case and choose itself as the winner

2

without amending substantive law.[1] To be sure, the line should not easily be crossed, *see Fletcher v. Peck*, 10 U.S. (6 Cranch) 87, 128 (1810), lest the Judiciary invade the Legislature's lawmaking territory. But ensuring that the indispensable separation between lawmaking and adjudicating retains more than a formalistic veil compels the conclusion that, under *Klein* and its lineage, Section 324 falls on the unconstitutional side of that line.

### A. *Klein*'s progeny affirm its core holding prohibiting Congress from dictating who prevails in pending cases without amending underlying law.

In *Klein*, the Supreme Court reviewed a Reconstruction statute passed while Klein's case was pending. Contrary to previous law, practice, and ruling, the law deemed a pardon "conclusive evidence" that the claimant had been disloyal to the United States, directing that "on proof of such pardon . . . the jurisdiction of the court shall cease, and the court shall forthwith dismiss the suit of such claimant." Act of July 12, 1870, § 1, 16 Stat. 230, 235; *Klein*, 80 U.S. at 143–44.

The Court struck down the law, determining Congress had "passed the limit which separates the legislative from the judicial power." *Klein*, 80 U.S. at 147. The law crossed that forbidden line because the law was, at bottom, "a means to an end" and "prescribe[d] a rule of decision of a cause in a particular way . . . to the

---

[1] *Klein*, 80 U.S. at 146; *see Patchak*, 138 S. Ct. at 905 (plurality opinion); *Bank Markazi*, 578 U.S. at 228; *Robertson v. Seattle Audubon Soc'y*, 503 U.S. 429, 436 (1992).

Judicial Department . . . in [a] case[] pending before it" without creating any "new circumstances" under the legislation. *Id.* at 146–47. The Court was particularly troubled by "allowing one party to the controversy to decide it in its own favor." *Id.* at 146. The Court later sharpened this element of *Klein*'s holding as Congress being prohibited from commanding "the courts to decide a controversy in the *Government's* favor." *United States v. Sioux Nation of Indians*, 448 U.S. 371, 404 (1980) (emphasis added).

    *Klein*'s proscription is best seen as an exception to the rule established earlier in *United States v. Schooner Peggy*, 5 U.S. (1 Cranch) 103 (1801), that Congress holds substantial power to change the law applicable to a pending case. *See* Evan C. Zoldan, *The Vanishing Core of Judicial Independence*, 21 Nev. L. J. 531, 552–53, 565 (2021). Chief Justice Marshall explained: "if subsequent to the judgment and before the decision of the appellate court, a law intervenes and positively changes the rule which governs, the law must be obeyed, or its obligation denied." *Schooner Peggy* at 110. *Klein* clarified that a statute directing *who* wins in a pending case *without amending the underlying law* fails to "positively change" the governing rule. *Cf. Klein* 80 U.S. at 146–47 (distinguishing *Pennsylvania v. Wheeling & Belmont Bridge Co.*, 59 U.S. (18 How.) 421 (1855), which left the Court "to apply its ordinary rules to the new circumstances created" by the *amended* law). In this light, the lineage of *Klein* shows that, while this

exception is rare, the Court has continuously affirmed the essentiality of there being such a line.

Consider *Robertson*. There, a statutory provision mandated that management of certain forests under two of the new law's provisions was "adequate consideration for the purpose of meeting the statutory requirements that [we]re the basis for" two pending suits. *Robertson*, 503 U.S. at 437. On its face, the provision appeared to violate *Klein* by deciding live cases. But the Court concluded the statute supplied new law. Previously, "claims would fail only if the challenged [timber] harvesting violated none of five old provisions." Under the new standards, "claims would fail if the harvesting violated neither of two new provisions." *Id.* at 438. Courts were left their adjudicatory function of applying the new substantive standards to pending and future cases. Though the statute had the effect of eliminating the legal basis for two pending suits, it did not offend—and the Court affirmed—*Klein*'s core prohibition on "compel[ling] . . . findings or results under old law." *Id.*

In *Bank Markazi*, a suit in which the government was not a party, the statute directed the outcome for terrorist victims, allowing satisfaction of judgments against Iran's central bank. But the Court upheld the law because it reasoned the challenged statute provided new legal standards to apply "to undisputed facts." *Bank Markazi*, 578 U.S. at 213, 218–19. Rather than simply directing a result

5

based on a rule of decision, the statute's new substantive law left "plenty" for courts to "adjudicate," such as defining crucial terms, determining whether the bank owned the assets, and ascertaining the assets' location.[2] *Id.* at 230 n.20.

*Bank Markazi* clarified, however, that a violation occurs not because a statute "le[aves] too little for courts to do, but because it attempt[s] to direct the result without altering the legal standards." *Id.* at 228. Though what is left to the courts may offer clues as to Congressional overreach—hence the Court explaining the statute left "plenty" to "adjudicate"—the central inquiry is whether a statute has provided new substantive legal standards for courts to apply.

*Patchak* tested the outer bounds of what qualifies as requisite new standards. In the process, it revealed a key distinction between *Klein*'s Act and those subsequently upheld.

Until *Patchak*, the statute in *Klein* was unique among the laws the Court had considered. It contained *two* suspect provisions: an operative provision, mandating a pardon be proof of disloyalty; and an express jurisdiction-stripping provision.

The statute in *Patchak* contained a similar structure: an operative provision, ratifying the government's decision to take certain property into trust; and one perceived as jurisdiction-stripping. *Patchak*, 138 S. Ct. at 904–06.

---

[2] Further animating the decision, the statute was "an exercise of congressional authority regarding foreign affairs, a domain in which the controlling role of the political branches is both necessary and proper." *Id.* at 234.

The case splintered the bench.

Writing for a plurality, Justice Thomas reiterated *Klein*'s restriction on compelling "findings or results under old law." *Patchak*, 138 S. Ct. at 905 (plurality opinion). The plurality opined that the jurisdiction-stripping provision was constitutional because it effectively worked a "change in law" applicable to "a particular class of cases"—those related to the property at issue. *Id.* at 909–10. Two Justices concurred in the judgment. *Id.* at 912–13 (Ginsburg, J., concurring in the judgment); *id.* at 913–14 (Sotomayor, J., concurring in the judgment). Three Justices vigorously dissented, reasoning that the statute violated *Klein* because Congress had "manipulate[d] jurisdictional rules to decide the outcome of a particular pending case." *Id.* at 919–20 (Roberts, C.J., dissenting).

No reasoning in *Patchak* is controlling on this Court. *See A.T. Massey Coal Co. v. Massanari*, 305 F.3d 226, 236 (4th Cir. 2002) ("The *Marks* rule [concerning plurality opinions] does not apply . . . unless the narrowest opinion represents a common denominator of the Court's reasoning and embodies a position implicitly approved by at least five Justices who support the judgment." (citations and internal quotation marks omitted)). While the Court upheld the statute in *Patchak*, no rationale garnered a majority. Nearly all Justices agreed, however, that *Klein*'s

core command prohibiting Congress from compelling an outcome in pending

litigation under old law held fast.[3]

### B. Principles from the *Klein* cases reveal whether a statute violates the separation of powers.

The *Klein* cases teach that the question is not *whether* Congress can cross the

line to take for itself the Judiciary's core adjudicatory function—it cannot—but

*when* does it do so. "The disagreements in *Patchak*" are "about nothing less

important than the line between the judicial and legislative powers." Zoldan, *supra*,

at 560. Several factors emerge that, if present, strongly suggest a statute violates

*Klein*.

Foremost, the statute applies to particular pending cases. *See, e.g.*, *Klein*, 80

U.S. at 146. Second, the law contains both an operative provision—such as the one

in *Patchak* ratifying the agency's decision—and a jurisdiction-stripping provision.

*Compare Patchak*, 138 S. Ct. at 904 n.2 (containing both provisions[4] and garnering

no majority opinion), *and Klein*, 80 U.S. at 142–46 (striking down a statute with

both provisions), *with Bank Markazi*, 578 U.S. at 218 (upholding a statute with

only an operative provision), *and Robertson*, 503 U.S. at 434–35 (same). Third, the

provisions purporting to change the law are mere "fig leaves" and supply no new

---

[3] *See Patchak*, 138 S. Ct. at 905 (plurality opinion); *id.* at 911–12 (Breyer, J., concurring); *id.* at 913–14 (Sotomayor, J., concurring in the judgment); *id.* at 914–22 (Roberts, C.J., dissenting).
[4] Patchak did not challenge the constitutionality of the ratification provision.

substantive legal standards for the court to administer. *See, e.g.*, *Bank Markazi*, 578 U.S. at 224, 247. Fourth, the jurisdiction-stripping provision is asymmetrical, meaning, effectively, that courts have no jurisdiction over claims only by certain parties. *Compare Klein*, 80 U.S. at 142–46 (striking down a statute that was asymmetrical (or one-sided), *i.e.*, it stripped jurisdiction over suits brought by a pardoned claimant only, not suits brought by the government), *with Patchak*, 138 S. Ct. 897 at 904 (upholding a statute, with no majority opinion, that was symmetrical (or neutral), *i.e.*, it withdrew jurisdiction over an action brought by *any* party). Fifth, the government is a party. *See, e.g.*, *Klein*, 80 U.S. at 146. And, finally, the statute directs that the government prevails. *See, e.g.*, *id.*

A statute containing only some of these factors may run afoul of the separation of powers. One that contains all—such as the law in *Klein*—forcefully indicates that Congress has usurped a court's distinct power to interpret and apply the law.

## II.    The Fiscal Responsibility Act Violates *Klein*.

Section 324 of the Fiscal Responsibility Act checks all factors *Klein* proscribes.

First, the statute applies to those particular cases pending as of the law's enactment. It matters not that there are three pending cases, which, nonetheless, all challenge the same project by the same entity. The statute in *Klein* likewise

implicated more than a single case. *See, e.g.*, *Patchak*, 138 S. Ct. at 917 (Roberts, C.J., dissenting). And *Bank Markazi* instructs that it's not the number of pending cases that matters but whether the statute directs the result in particular pending cases without altering the legal standards. 578 U.S. at 228.

Next, as in *Klein*, the law contains an operative provision—Section 324(c)(1)—and a jurisdiction-stripping provision—Section (d)(1).

Third, neither provision supplies new substantive legal standards for this Court to interpret and apply. The determinations that the statute in *Bank Markazi* required were more than mere "fig leaves," substantively changing the underlying law. *Id.* at 224. Not so with Section 324(c)(1). It simply "ratifies" all federal approvals for a single project.[5] Ratification of pre-existing federal approvals does not amend the several underlying existing laws at issue. Quite the opposite. It confirms those existing approvals *irrespective* of whether they violate the underlying laws, leaving the court no new law to apply, nor any adjudicatory function to perform.

True, one could argue that Section 324(c)(1) permits this Court to ask whether the challenge is against a federal approval of the project. But how is that

---

[5] Nor does Section 324(c)(2) create new substantive law. It merely directs federal agencies to "maintain" the approvals already ratified by Section 324(c)(1). Section 324(f) is but a blanket superseding clause essentially redundant with Section 324(c)'s "notwithstanding" clause.

any more than a fig leaf? Even the Court's example of a law declaring "Smith wins," which would infringe Article III, could be read to leave room for a court to determine whether the case before it deals with Smith and which party Smith is. But this exercise would constitute nothing more than empty formalism indeed, obliterating the line between lawmaking and adjudicating.

But to make certain this Court could not exercise even this empty power, to gild the lily, Congress stripped jurisdiction to hear any challenge to federal approvals under Section 324(d)(1), "including any lawsuit pending in a court as of the date of enactment." Because there is no question that this pending case challenges such federal approvals, the effect is to compel a specific judicial result without even the opportunity to adjudicate how any purported "new" law bears on the merits, crossing the line from validly "tell[ing] th[is] [C]ourt[] what classes of cases [it] may decide" to invalidly "prescrib[ing] . . . how [it] decide[s] th[is] case[]." *Arlington v. FCC*, 569 U.S. 290, 297 (2013) (citations omitted).

This Court's *Klein* analysis could stop there. But to be sure the Act was unmistakably about picking the winner, Congress went further to lay bare its seizure of the Court's distinct Article III power. Section 324(e)(1) strips jurisdiction asymmetrically—not seen since the invalid provision in *Klein*. Courts lack jurisdiction solely over those challenges to federal agencies' "*grant[ing]*" an action or "*issu[ing]*" an approval needed for "construction and initial operation at

11

full capacity of the Mountain Valley Pipeline," but not *denying* an action. This means a challenge could be brought against permit *denial*, while the petitioner does not enjoy the same benefit challenging permit *approval*.

Finally, the government is a party to this suit, meaning the net effect is that the statute allows the government "to decide [the case] in its own favor," *Klein*, 80 U.S. at 146, without any analysis by this Court, *Bank Markazi*, 578 U.S. at 225. Section 324 is thus completely coextensive with the unconstitutional statute in *Klein*.

Should Section 324 stand, "[h]ereafter, with this Court's seal of approval, Congress can unabashedly pick the winners and losers in particular pending cases." *Id.* at 251.

## CONCLUSION

For these reasons, *amici* respectfully submit that the motions to dismiss should be denied.

DATE: July 10, 2023

Respectfully submitted,

*/s/ Layla Hughes*
Layla Hughes
909 Goldbelt Ave
Juneau, AK 99801
Telephone: +1 303 518-4211
Email: laylahughes@laylahughes.com

*Counsel for Amici Curiae*

13

**APPENDIX: LIST OF AMICI**

*List of* Amici Curiae *Federal Courts Scholars*

(Institutional affiliations are provided
for identification purposes only.)

**WILLIAM D. ARAIZA**
Stanley A. August Professor of Law
Brooklyn Law School

**ERWIN CHEMERINSKY**
Dean and Jesse H. Choper Distinguished Professor of Law
University of California, Berkeley School of Law

**CAPRICE ROBERTS**
Associate Dean of Faculty Development & Research and J.Y. Sanders Professor of Law
Louisiana State University Paul M. Hebert Law Center

**HOWARD M. WASSERMAN**
Associate Dean for Research and Faculty Development and Professor of Law
Florida International University College of Law

## CERTIFICATE OF COMPLIANCE

I certify that this brief complies with the type-volume limitations of Fed. R. App. P. 29(a)(5) and 32(a)(7)(B) because it contains 2,596 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

I further certify that this brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionately spaced typeface using Microsoft Word in 14-point Times New Roman font.


DATE: July 10, 2023

Respectfully submitted,


*/s/ Layla Hughes*
Layla Hughes
909 Goldbelt Ave
Juneau, AK 99801
Telephone: +1 303 518-4211
Email: laylahughes@laylahughes.com

## CERTIFICATE OF SERVICE

I certify that on July 10, 2023, I electronically filed the foregoing with the

Clerk of Court for the United States Court of Appeals for the Fourth Circuit by

using the appellate CM/ECF system, which will automatically send e-mail

notification of such filing to all counsel of record.

*/s/ Layla Hughes*
Layla Hughes
909 Goldbelt Ave
Juneau, AK 99801
Telephone: +1 303 518-4211
Email: laylahughes@laylahughes.com