No. 23-1592
(consolidated with No. 23-1594)

_____

IN THE UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

_____

THE WILDERNESS SOCIETY,
*Petitioner*,

v.

UNITED STATES FOREST SERVICE, UNITED STATES BUREAU OF LAND
MANAGEMENT, et al.,
*Respondents*,

&

MOUNTAIN VALLEY PIPELINE, LLC,
*Intervenor*.

_____

**RESPONDENTS' OPPOSITION TO MOTION TO STAY PENDING REVIEW**

_____

**INTRODUCTION**

Petitioner is not entitled to a stay of the Forest Service's Record of Decision
(ROD) relating to the Mountain Valley Pipeline (MVP) because this Court lacks
jurisdiction over these consolidated petitions. Petitioner's arguments that the ROD
violates the National Forest Management Act (NFMA) or the Administrative
Procedure Act (APA) therefore cannot succeed. Nor has Petitioner shown that it

will be irreparably harmed without a stay or that the public interest justifies the extraordinary remedy it seeks. Petitioner's motion should be denied.

## BACKGROUND

These consolidated petitions challenge agency action necessary for the construction and operation of the MVP. The first petition seeks judicial review of the Forest Service's ROD issued May 15, 2023. That ROD documents two actions by the Forest Service: (1) its concurrence in the Bureau of Land Management's (BLM) grant of a right-of-way for the MVP through the Jefferson National Forest, and (2) its approval of a project-specific Forest Plan amendment. The second petition seeks judicial review of BLM's ROD issued May 17, 2023. BLM's ROD approves the issuance of the MVP right-of-way and an associated temporary use permit.

Petitioner contends that the Forest Service issued its ROD in violation of the NFMA, the APA, and the National Environmental Policy Act (NEPA). *See* No. 23-1592, ECF 16. Petitioner contends that BLM issued its ROD in violation of NEPA, the Mineral Leasing Act, and the APA. *See* No. 23-1594, ECF 15.

Two days after the filing of the petitions, the Fiscal Responsibility Act ("Act") became law. *See* Fiscal Responsibility Act of 2023, Pub. L. No. 118-5, 137 Stat. 10 (2023). Section 324 contains several provisions to facilitate the timely

2

final construction and operation of the MVP, which the Act declares to be in the national interest, Act § 324(b).

*First*, the Act provides that "no court shall have jurisdiction to review any action" taken by an administrative agency "necessary for the construction and initial operation at full capacity of the [MVP] … whether issued prior to or subsequent to the date of enactment of this section, and *including any lawsuit pending in a court as of the date of enactment of this Section*." *Id.* § 324(e)(1) (emphasis added).

*Second*, the Act "ratifies and approves" all administrative actions "necessary for the construction and initial operation at full capacity of the [MVP]," *id.* § 324(c)(1), and "directs the respective Secretaries … to continue to maintain such authorizations," *id.* § 324(c)(2).

*Finally*, the Act gives the D.C. Circuit exclusive original jurisdiction over any constitutional challenges to Section 324 itself. *Id.* § 324(e)(2).

Congress directed that each of those provisions shall apply "[n]otwithstanding any other provision of law." *Id.* § 324(c), (d), (e). And Congress similarly declared that Section 324 "supersedes any other provision of law … that is inconsistent with the issuance of any" covered authorization. *Id*. § 324(f).

Respondents and Intervenor have both moved this Court to dismiss the petitions for lack of jurisdiction. ECF 12, 20. While those motions remain

undecided, Petitioner has filed a motion for a stay of the Forest Service's ROD

pending review. ECF 25. Petitioner has not sought to stay BLM's ROD.

## ARGUMENT

A stay pending review "is an intrusion into the ordinary processes of

administration and judicial review, and accordingly is not a matter of right." *Nken*

*v. Holder*, 556 U.S. 418, 427 (2009) (cleaned up). This intrusion is particularly

acute here, where the requested relief does not seek to suspend the judicial

alteration of the status quo, as in the more typical scenario where a court of appeals

is asked to stay a lower-court order. Rather, Petitioner seeks affirmative judicial

intervention into an agency's statutory process by asking the Court to prohibit the

Forest Service from implementing existing authorizations necessary for the

construction and initial operation of the MVP, which have been in place for nearly

two months.

To warrant such extraordinary relief, Petitioner must make "a strong

showing that it is likely to succeed on the merits"; prove that its members "will be

irreparably injured absent a stay"; and show that the "balance of hardships" and

"public interest" warrant the use of the Court's coercive power. *Id*. at 434.

Petitioner has not met this high standard.

4

## I.     Petitioner has not demonstrated a likelihood of success on the merits

Petitioner will not succeed on the merits because Section 324 divests this Court of jurisdiction over the petitions and moots Petitioner's claims. While Petitioner contends that Section 324 is unconstitutional, Congress vested exclusive jurisdiction over that claim in the D.C. Circuit, and the claim lacks merit in any event. *See Mistretta v. United States*, 488 U.S. 361, 384 (1989) (Only "the most compelling constitutional reasons" may justify invalidating "a statutory provision that has been approved by both Houses of Congress and signed by the President."). The Court should deny the motion for stay pending review.

### A.     This Court lacks statutory jurisdiction over the petitions for review

#### 1.     Section 324(e)(1) withdraws jurisdiction and restores federal sovereign immunity

Section 324(e)(1) of the Act provides that "no court shall have jurisdiction to review any action" of an agency that grants any "approval necessary for the construction and initial operation at full capacity of [the MVP]." And Section 324(e)(1) specifically applies to "any lawsuit pending in a court as of [Section 324's] date of enactment." Petitioner accordingly does not dispute that Section 324(e)(1)'s terms apply to these petitions.

Section 324(e)(1) also restores the government's sovereign immunity. "[S]overeign immunity is jurisdictional" and "shields the Federal Government and

its agencies from suit." *FDIC v. Meyer*, 510 U.S. 471, 475 (1994). A "court's jurisdiction to entertain [a] suit" must therefore rest on a statutory waiver of that immunity. *Id*. This Court's jurisdiction over the petitions for review and the waiver of sovereign immunity in this case originally rested on the provision for judicial review in 15 U.S.C. § 717r(d)(1) and was supported by the APA's waiver of sovereign immunity, which waives federal agencies' immunity from suits for "judicial review" of "agency action" and "seeking relief other than money damages." 5 U.S.C. § 702(a). Congress, however, expressly withdrew that jurisdiction and restored sovereign immunity for cases concerning the MVP approvals. Act § 324(e)(1).

Section 324(e)(1)'s withdrawal of jurisdiction operates "[n]otwithstanding any other provision of law." *Id*. The statute therefore withdraws jurisdiction "notwithstanding" the general jurisdictional grant in 15 U.S.C. § 717r(d)(1) that vests particular courts with jurisdiction to conduct APA review. *See Mapoy v. Carroll*, 185 F.3d 224, 229 (4th Cir. 1999) (provision withdrawing jurisdiction "notwithstanding any other provision of law" supersedes all other relevant jurisdictional provisions).

In that respect, Section 324(e)(1)'s jurisdictional basis similar to the statutory provision in *Patchak v. Zinke*, 138 S.Ct. 897 (2018), which provided that, "[n]otwithstanding any other provision of law," an action concerning a particular

parcel of land "shall not be filed or maintained in a Federal Court and shall be promptly dismissed." *Id*. at 904. And as Justice Ginsburg explained in *Patchak*, by barring suit "notwithstanding" any other provision of law, the statute there effected a "[r]etraction of [the APA's] consent to be sued (effectively restoration of immunity)." *Id*. at 913 (Ginsburg, J., concurring in the judgment). Section 324(e)(1) does exactly that by withdrawing jurisdiction to "review" the type of agency "action" here, thereby restoring sovereign immunity in this context. This Court accordingly lacks jurisdiction over the petitions.

> **2.    This Court lacks jurisdiction to consider Petitioner's claim that Section 324(e)(1) is unconstitutional**

Petitioner does not contest that its claims are barred by Section 324's plain text. Instead, Petitioner argues that Section 324 is inapplicable because, Petitioner claims, it unconstitutionally attempts to dictate a result in this pending litigation. Mt. 6. This Court lacks jurisdiction to hear that claim.

Section 324(e)(2) grants the D.C. Circuit "original and exclusive jurisdiction over any claim alleging the invalidity of this section or that an action is beyond the scope of authority conferred by [§ 324]." That text bars this Court from adjudicating Section 324's constitutionally. The ordinary definition of "claim"— "[a] statement that something yet to be proved is true"—encompasses Petitioner's contention that Section 324 is invalid, because that contention (which has yet to be proved true) is a "claim" of statutory invalidity. *Claim*, *Black's Law Dictionary*

7

(11th ed. 2019). And because Section 324(e)(2) vests the D.C. Circuit with exclusive jurisdiction over such claims, it "necessarily denies jurisdiction of such cases to any other federal court." *Mississippi v. Louisiana*, 506 U.S. 73, 77–78 (1992) (citation omitted).

That is the only reading of Section 324(e)(2) that makes sense in this context. *See Maracich v. Spears*, 570 U.S. 48, 65 (2013) (statutory term must be interpreted in the context of statute as a whole). Section 324's provisions ratifying all necessary federal approvals, withdrawing jurisdiction over challenges, and confining questions about the statute itself to one court collectively achieve Congress' goal of eliminating uncertainty relating to the MVP. Petitioner's reading—which would allow challenges to the statute to proceed in multiple jurisdictions, contrary to Congress' plain intent—does not.

Petitioner's argument that Section 324(e)(2)'s reference to "claim[s]" makes it merely a venue provision for newly filed actions fails to account for that statutory context. Moreover, because Congress has ratified the challenged approvals, Act § 324(c), Petitioner has no viable contention *other than* its claim that Section 324 is invalid. Where, as here, "Congress has … ratified agency action by statute, even if that action had been arbitrary and capricious, judicial review requires a challenge to the statute itself." *James v. Hodel*, 696 F. Supp. 699, 701

8

(D.D.C. 1988), *aff'd*, 893 F.2d 1404 (D.C. Cir. 1990). Any such challenge must be brought in the D.C. Circuit.

### 3.     Section 324(e)(1) is constitutional

In any event, Section 324(e)(1) is constitutional because, consistent with Article III, Congress possesses authority to withdraw jurisdiction to hear cases, including pending cases against the federal sovereign in this context. Article III provides that "[t]he judicial Power of the United States, shall be vested in one supreme Court, and in such inferior Courts as the Congress may from time to time ordain and establish." U.S. Const. Art. III, § 1. Included in Congress' broader power to ordain and establish inferior federal courts is the power "to define and limit the jurisdiction of" those courts. *Lauf v. E. G. Skinner & Co.*, 303 U.S. 323, 330 (1938). The "Constitution simply gives to the inferior courts the capacity to take jurisdiction in the enumerated cases, but it requires an act of Congress to confer it." *Kline v. Burke Constr. Co.*, 260 U.S. 226, 234 (1922).

### a.     Congress permissibly withdrew jurisdiction over all cases, including pending cases, seeking review of authorizations necessary for the MVP

1.     Section 324(e)(1) is constitutional because Congress' power to define and limit the jurisdiction of the inferior federal courts includes the authority to withdraw jurisdiction previously given and to subject pending cases to the new jurisdictional limitation. Jurisdiction that has been conferred on the federal courts

"may, at the will of Congress, be taken away in whole or in part; and if withdrawn without a saving clause all pending cases though cognizable when commenced must fall." *Kline*, 260 U.S. at 234. The Supreme Court has repeatedly adhered to that fundamental principle. *See Bruner v. United States*, 343 U.S. 112, 116-117 (1952); *Assessors v. Osbornes*, 76 U.S. 567, 575 (1870); *see also Landgraf v. USI Film Prods.*, 511 U.S. 244, 274 (1994) (noting that the Court has "regularly" applied intervening jurisdictional limitations to pending cases).

In *Ex parte McCardle*, 74 U.S. 506 (1869), for example, a federal district court denied a petition for a writ of habeas corpus under a statute granting federal courts jurisdiction over such petitions, and the prisoner appealed to the Supreme Court pursuant to a statutory grant of appellate jurisdiction. *See id*. at 515. Congress, however, repealed the appellate-jurisdiction provision before the Court issued a decision. *Id*. at 512-14. Acknowledging the repealing statute, the Court held that Congress had acted within its power under Article III, stating that when jurisdiction "ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause." *Id.* at 514.

Similarly, in *Insurance Co. v. Ritchie*, 72 U.S. 541 (1867), an insurance company incorporated in Massachusetts sued state tax collectors in federal court under a statute that granted federal courts jurisdiction over suits between citizens of the same state "for causes arising under the revenue laws." *Id*. at 542-43. While

10

the suit was pending, Congress repealed the jurisdictional provision. *Id*. at 543. "It is clear," the Court explained, "that when the jurisdiction of a cause depends upon a statute[,] the repeal of the statute takes away the jurisdiction," and the Court thus dismissed the case for lack of jurisdiction. *Id.* at 544; *see id*. at 545.

More recently, in *Patchak*, the plaintiff sued the Secretary of the Interior for acquiring land in trust for an Indian tribe. After suit was instituted, Congress enacted a statute withdrawing jurisdiction from the federal district courts over all suits relating to the land at issue. 138 S.Ct. at 902. The plaintiff argued that Congress violated Article III by improperly directing the results of pending litigation. *Id*. at 904. While no single rationale gained a majority of the Court, six Justices upheld the law on one of two theories. The plurality explained that "Congress violates Article III when it compels findings or results under old law, but not when it changes the law." *Id*. at 905 (cleaned up) (citing *Robertson v. Seattle Audubon Soc*., 503 U.S. 429, 439 (1992) and *Plaut v. Spendthrift Farm, Inc*., 514 U.S. 211, 218 (1995)). The plurality reasoned that the provision barring suits relating to the land at issue was a change in law that did not infringe on judicial power. *Id.* at 907. The Court explained that "Congress generally does not infringe the judicial power when it strips jurisdiction because, with limited exceptions, a congressional grant of jurisdiction is a prerequisite to the exercise of judicial power." *Id.*

Section 324(e)(1) likewise changes the law by withdrawing federal-court jurisdiction to review existing or future federal approvals necessary for the construction and operation of the MVP, and its application to this case is undeniable. The Act's withdrawal of jurisdiction to review such actions concerning the MVP falls squarely within Congress' recognized authority to "give, withhold or restrict [federal-court] jurisdiction at its discretion." *Kline*, 260 U.S. at 234.

2.    Petitioner mistakenly contends that Section 324(e)(1) directs the outcome of pending litigation without changing governing law. As just explained, Section 324(e)(1) changes the law by barring federal-court jurisdiction over claims challenging approvals necessary for the MVP, thereby eliminating the "competence [of federal courts] to adjudicate [that] particular category of cases." *Wachovia Bank v. Schmidt*, 546 U.S. 303, 316 (2006). And in doing so, Section 324(e)(1) provides a new legal standard for courts to apply: if an action challenges decisions of certain federal and state officials "necessary for the construction and initial operation at full capacity of the [MVP]," it cannot be maintained in federal court and must be dismissed. Although that new standard "effectively guaranteed" that Petitioner's claims in these cases would be dismissed (because the challenged authorizations clearly fall within Section 324's scope), "a statute does not impinge

on judicial power when it directs courts to apply a new legal standard to undisputed facts." *Bank Markazi v. Peterson*, 578 U.S. 212 230 (2018).

Petitioner has argued based on *Klein* that Congress cannot revoke a court's jurisdiction over pending cases as a "means to an end." ECF 22-1 at 17 (quoting *United States v. Klein*, 80 U.S. 128, 145 (1871)). But the problem in *Klein* was not that the statute withdrew the court's jurisdiction as a means to an end. Only two years earlier, the Court had upheld a statute repealing the grant of appellate jurisdiction by which a case had come to the Court, and admonished that courts "are not at liberty to inquire into the motives of the legislature" when Congress shapes the jurisdiction of the federal courts. *McCardle*, 74 U.S. at 514.

The problem in *Klein* was that Congress not only stripped jurisdiction over appeals but also compelled certain judicial findings along the way pertaining to a matter that was beyond Congress' constitutional authority. *Klein* acknowledged that "[u]ndoubtedly the legislature has complete control over the organization and existence of [the courts] and may confer or withhold the right of appeal from [their] decisions." 80 U.S. at 145. The Court thus further acknowledged that "if th[e] act did nothing more, … [i]f it simply denied the right of appeal in a particular class of cases, there could be no doubt that it must be regarded as an exercise of the power of Congress to make such exceptions from the appellate jurisdiction as should seem to it expedient," and "it would be [the Court's] duty to

give [the law] effect." *Id*. The problem with the statutory denials of jurisdiction, the Court explained, was that those provisions required the courts to first "ascertain the existence of certain facts," which required application of Congress' "arbitrary rule of decision" that a pardon must be construed as evidence of disloyalty, contrary to a prior Supreme Court decision. *Id*. at 146. If the court so found, dismissal was required.  It was thus the predicate for the dismissal for lack of jurisdiction—the attempted alteration of the effect of a pardon that Congress had no power to make and therefore did not change the law—that rendered the statute unconstitutional. *See Bank Markazi*, 578 U.S. at 227-28.

Unlike the statute in *Klein*, Section 324(e)(1) does not "bind the Court to decide a case in accordance with a rule of law independently unconstitutional on other grounds," or "dictate how the Court should decide an issue of fact (under threat of loss of jurisdiction)." *Ameur v. Gates*, 759 F.3d 317, 327 (4th Cir. 2014). Congress has authority to withdraw its grant of jurisdiction to the federal courts (and the government's waiver of sovereign immunity regarding a particular subject like construction and operation of the MVP, *see infra* pp. 16-17). And in deciding whether the Act applies, the courts are "left to apply [their] ordinary rules to the new circumstances created by the act," as discussed above. *Klein*, 80 U.S. at 147.

Section 324(e)(1) thus is unlike the "Smith wins" hypothetical in the *Bank Markazi* dissent. Section 324(e)(1) establishes that the court lacks jurisdiction over

any suit seeking judicial review of agencies' authorizations necessary for the MVP, preventing the court from issuing a judgment on the merits or granting relief to any challenger. Congress has supplied the applicable law (jurisdiction is lacking if a suit seeks review of the MVP authorizations), and the courts apply that law. Those are precisely the roles that the Constitution assigns to each branch. *See United States v. Brainer*, 691 F.2d 691, 695 (4th Cir. 1982).

The plurality opinion in *Patchak* confirms as much. *See* 138 S.Ct. at 906 ("Statutes that strip jurisdiction change the law for the purpose of Article III, just as much as other exercises of Congress' legislative authority."). Indeed, Section 324(e) is an even clearer example of Congress properly exercising its legislative authority than the provision at issue in *Patchak*, and it does not have certain features that concerned the dissent in that case. The provision in *Patchak* targeted (according to the dissent) a single particular case brought by a party within the statute of limitations. *See* 138 S.Ct. at 916-18, 920 (Roberts, C.J., dissenting). Section 324(e)(1), in contrast, prospectively changes the law for a category of both pending and future cases challenging existing and future administrative actions necessary for the construction and operation of the MVP. Moreover, the *Patchak* statute did "not clearly state that it impose[d] a jurisdictional restriction," *id*. at 919, while Section 324(e)(1) expressly withdraws "jurisdiction." And, the *Patchak* statute "explicitly dictate[d] the dismissal of a pending proceeding," *id*. at 917,

which Section 324(e)(1) does not do.[1] The *Patchak* dissent itself also acknowledged that permissibly changing the law implies "some measure of generality or preservation of an adjudicative role for the courts." *Id.* at 920. Section 324(e)(1), as discussed, satisfies both criteria.

> **b.    Congress permissibly restored sovereign immunity from suit**

Section 324(e)(1) is also constitutional as a restoration of federal sovereign immunity. It is well established that, once Congress has waived sovereign immunity, that consent to suit may be "withdrawn [by Congress] at any time," *Lynch v. United States*, 292 U.S. 571, 581 (1934), including during a pending lawsuit, *see District of Columbia v. Eslin*, 183 U.S. 62, 63-65 (1901). And as explained above, Section 324(e)(1) restores federal sovereign immunity otherwise waived by 15 U.S.C. § 717r(d)(1) and the APA's judicial-review provisions in this context, by barring certain suits for "review" of agency "action" providing approvals for the MVP. As a result, this Court "need venture no further" than to recognize that Section 324(e)(1) "retain[s] the Government's sovereign immunity

---

[1] Although Section 324(e)(1) specifies that no jurisdiction exists to entertain petitions for review like those here, it does not foreclose the possibility that "claims" of Section 324's invalidity raised in the contest of those petitions may be transferred to the D.C. Circuit if in the interests of justice. *See* 28 U.S.C. § 1631. Petitioner has not requested such a transfer.

from suit" "to decide this case." *Patchak*, 138 S.Ct. at 912 (Ginsburg, J.,

concurring in the judgment).

Indeed, Justice Ginsburg's concurring opinion on this basis in *Patchak* is

properly regarded as the Court's holding in *Patchak* because it reflects the

"position taken by those Members who concurred in the judgments on the

narrowest grounds." *Marks v. United States*, 430 U.S. 188, 193 (1977). Whereas

the analysis in *Patchak*'s plurality opinion more broadly addressed changes in law

that withdraw jurisdiction, 138 S.Ct. at 905-910, Justice Ginsburg's opinion

(joined by Justice Sotomayor) more narrowly addressed changes in law barring

jurisdiction over certain actions against the federal sovereign and by withdrawing

jurisdiction and thereby restoring the federal government's immunity from suit, *id*.

at 912-13. Withdrawals of sovereign immunity go to a court's jurisdiction. *See*

*Meyer*, 510 U.S. at 475. On this understanding, Justice Ginsburg's concurring

opinion "is the decisive one" that binds this Court. *See United States v. Stitt*, 250

F.3d 878, 890 n.11 (4th Cir. 2001).[2]

---

[2] While Justice Sotomayor's separate opinion concluded that the statute in *Patchak* should be construed as a restoration of immunity rather than a jurisdiction-stripping statute that implicated separation-of-powers concerns under *Klein*, she did not address the proposition that "[s]overeign immunity is jurisdictional in nature." *Meyer*, 510 U.S. at 475.

17

Thus, the conclusion that Section 324(e)(1) is constitutional is supported by both the plurality opinion and Justice Ginsburg's concurring opinion, and is generally consistent with the dissenting opinion.

*     *     *     *

Section 324(e)(1) maintains the judiciary's traditional role of applying law to fact. This Court's role under that provision is to determine if a judicial action seeks review of agency action necessary for the construction or initial operation of the MVP, regardless of when the agency authorization was issued. If the Court concludes that it does, jurisdiction is barred, and the government is immune from the suit. If it does not, the suit may proceed. And because the law's application to this case is undeniable, the Court lacks jurisdiction and Petitioner cannot succeed.

### B.      Section 324(c) moots the controversy

#### 1.      Section 324(c) supersedes the statutory basis for the petitions for review

Even if this Court possessed statutory jurisdiction, it would lack Article III jurisdiction because Section 324(c) separately moots Petitioner's claims. Article III limits federal jurisdiction to live cases and controversies. *See Eden, LLC v. Just.*, 36 F.4th 166, 169 (4th Cir. 2022). The enactment of a law that resolves the parties' dispute moots the case. *Holloway v. City of Virginia Beach*, 42 F.4th 266, 273 (4th Cir. 2022); *see also Nuclear Energy Inst. v. EPA*, 373 F.3d 1251, 1309 (D.C. Cir. 2004); *Am. Bar Ass'n v. FTC*, 636 F.3d 641, 643 (D.C. Cir. 2011); *see also*

18

*generally* Wright & Miller, Fed. Prac. and Proc. § 3533.6 (Superseding Legislative Action). Such is the case here.

Section 324(c) definitively resolves the parties' dispute by "ratif[ying]" and "approv[ing]" the challenged RODs "[n]otwithstanding any other provision of law," Act § 324(c), including the preexisting legal requirements that Petitioner alleges were violated. Congress' "use of such a 'notwithstanding' clause clearly signals [its] intention that the provisions of the 'notwithstanding' section override conflicting provisions of any other" laws. *Cisneros v. Alpine Ridge Grp*., 508 U.S. 10, 18 (1993). "A clearer statement is difficult to imagine." *Id.* Section 324(f) also confirms that Section 324(c) "supersedes any other provision of law … that is inconsistent with the issuance of any" covered authorization. And Congress clearly has the power to ratify agency action affecting federal lands because the "power over the public land … entrusted to Congress is without limitations." *Kleppe v. New Mexico*, 426 U.S. 529, 539 (1976).

Petitioner's contention that the Federal Respondents violated requirements of preexisting environmental law is now moot because Congress—the same body that instituted those legal requirements in the first place—has superseded those requirements in this context and ratified the challenged agency actions before this Court or any court had passed on their validity. Accordingly, the petitions for review are now moot. *See Friends of the Earth v. Haaland,* No. 22-5036, 2023 WL

19

3144203 (D.C. Cir. Apr. 28, 2023); *Consejo de Desarrollo Economico, Mexicali v. United States*, 482 F.3d 1157, 1169-74 (9th Cir. 2007).

### 2. Section 324(c) is constitutional

Section 324(c)'s ratification and approval of the challenged authorizations also falls squarely within the scope of Congress' legislative authority. Section 324(c) does not, as Petitioner contends, pick winners and losers in pending litigation or compel results under old law. Section 324(c) makes *new* law by ratifying project-related authorizations "[n]otwithstanding" any provision of old law. Section 324(c) also supersedes "any other provision of law" that is inconsistent with the challenged authorizations. Act § 324(f). In short, Congress changed the substantive law applicable to those authorizations. *See Alliance for the Wild Rockies v. Salazar*, 672 F.3d 1170, 1174-75 (9th Cir. 2012) (statute directing agency to act without regard to other law "amended the law"); *Consejo*, 482 F.3d at 1168-70 (same).

Congress unquestionably may "ratify ... acts which it might have authorized, and give the force of law to official action [allegedly] unauthorized when taken," *Swayne & Hoyt v. United States*, 300 U.S. 297, 301-302 (1937), provided the ratification "does not interfere with intervening rights," *United States v. Heinszen*

& *Co.*, 206 U.S. 370, 384 (1907).[3] And "irrespective of any doctrine of ratification," Congress may establish retroactively by legislation that an agency action is "confirmed and approved" to be within the agency's powers. *Swayne & Hoyt*, 300 U.S. at 302; *see also Thomas v. Network Solutions*, 176 F.3d 500, 506 (D.C. Cir. 1999); *National Coal. to Save Our Mall v. Norton*, 269 F.3d 1092, 1097 (D.C. Cir. 2001). Section 324(c) thus falls squarely within the scope of Congress' legislative authority.[4]

That Section 324(c) is outcome-determinative is immaterial. Congress "may amend the law and make the change applicable to pending cases, even when the amendment is outcome determinative," *Bank Markazi*, 578 U.S. at 215, provided the amendment does not "direct any particular findings of fact or applications of law, old or new, to fact," *Robertson*, 503 U.S. at 438. Section 324(c) does not

---

[3] Section 324(c) does not impermissibly infringe on any alleged right to pursue a cause of action under old law. *See Patchak v. Jewell*, 828 F.3d 995, 1005 (D.C. Cir. 2016).

[4] The *Patchak* statute contained a similar ratification provision. 138 S.Ct. at 904. But contrary to amici's suggestion, ECF 28 at 6-7, the Court did not address the constitutionality of that provision. *See* 138 S.Ct. at 904 n.2; *see also id*. at 911 (Breyer, J., noting that he was "aware of no substantial argument" that such provisions are unconstitutional).

direct the Court to make findings or to rule that Petitioner's claims are moot; the Court must make that determination after applying the provision to the facts.

It also makes no difference that the determination the Court is called upon to make under Section 324(c) is "uncontested or incontestable" in this case. *Bank Markazi*, 578 U.S. at 230 (quoting *Pope v. United States*, 323 U.S. 1, 11 (1944)). Whether "the facts be ascertained by proof or by stipulation, it is still a part of the judicial function to determine whether" the challenged approvals are covered authorizations, *Pope*, 323 U.S. at 11, and if so, whether Section 324(c)'s ratification of them moots Petitioner's claims. As stated, Congress clearly has the power to ratify agency action notwithstanding any contrary provision of preexisting law, *see Heinszen*, 206 U.S. at 384, and its exercise of that power here does not offend the Constitution merely because it allegedly leaves "too little for courts to do." *Bank Markazi*, 578 U.S. at 228.

## II.     Petitioner has not satisfied the remaining injunction factors.

Even if Petitioner could succeed on the merits, it has not shown that a stay is needed to prevent irreparable harm, particularly in the time it will take to rule on the motions to dismiss. Petitioner's conclusory assertions of possible harms do not

make the required clear showing that irreparable harm is likely absent a stay. *See Winter v. NRDC, Inc.*, 555 U.S. 7, 8, 22, 24 (2008).[5]

Nor has Petitioner shown that a stay is in the public interest, which is "a uniquely important consideration in evaluating a request for [interim relief]." *National Ass'n of Farmworkers Orgs. v. Marshall*, 628 F.2d 604, 616 (D.C. Cir. 1980). In weighing the public interest, the views of "Congress, the elected representatives of the entire nation," reflect the "sense by which public interest should be gauged." *Cuomo v. NRC*, 772 F.2d 972, 978 (D.C. Cir. 1985) (per curiam). In the Act itself, Congress expressly determined that "timely completion of construction and operation of the [MVP] is required in the national interest." Act § 324(b). And although Petitioner believes natural gas from the MVP is not needed (Mt. 22-23), Congress has concluded otherwise. Act § 324(b). A court "sitting in equity cannot ignore the judgment of Congress, deliberately expressed in legislation." *United States v. Oakland Cannabis Buyers' Co-op.*, 532 U.S. 483, 497 (2001).

Petitioner contends that the Act at most indicates that timely competition of the MVP "is *a* public interest," Mt. 22, and that the public interest is also served by protecting natural resources from environmental harm in violation of NEPA and

---

[5] The Forest Service's analysis explains why the MVP will not cause long-term harm to soils, water resources, or sensitive species. ECF 25-3 at 36-67, 86-96.

NFMA, *id*. at 21. That argument fails because Congress has ratified the challenged RODs notwithstanding any provision of those laws, meaning that a finding that the RODs conflict with a requirement of NFMA or the APA would not make the RODs unlawful or contrary to Congress' determination of the public interest. Act § 324(c)(1). And courts may not "override Congress' policy choice" in the Act or "reject the balance that Congress has struck" in that superseding statute. *Oakland Cannabis*, 532 U.S. at 497. A stay therefore would be contrary to the public interest and can be denied for that reason alone.

## CONCLUSION

For the foregoing reasons, this Court should deny the stay.

Respectfully submitted,

*/s/ Allen M. Brabender*
TODD KIM
*Assistant Attorney General*

RACHEL HERON
KEVIN W. MCARDLE
ALLEN M. BRABENDER
*Attorneys, Appellate Section*
United States Department of Justice
Environment & Natural Resources Section
P.O. Box 7415
Washington, DC 20044
(202) 514-5316
allen.brabender@usdoj.gov

July 10, 2023
DJ # 90-13-9-17145
DJ # 90-13-9-17146

**CERTIFICATE OF COMPLIANCE**

I hereby certify that this motion complies with the type-face requirements of

Fed. R. App. P. 32(a)(5) and the type-volume limitations of Fed. R. App. P.

27(d)(2)(A). This motion contains 5,199 words, excluding the parts of the motion

excluded by Fed. R. App. P. 27(d)(2) and 32(f).


/s/ Allen M. Brabender
*Counsel for Federal Respondents*

## CERTIFICATE OF SERVICE

I hereby certify that on July 10, 2023, I electronically filed the foregoing with the Clerk of Court using the CM/ECF System which will automatically send e-mail notification of such filing to all counsel of record.

/s/ Allen M. Brabender
*Counsel for Federal Respondents*