Nos. 23-1592(L), 23-1594

---

IN THE UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

---

THE WILDERNESS SOCIETY,
Petitioner,

v.

UNITED STATES FOREST SERVICE, ET AL., and
UNITED STATES BUREAU OF LAND MANAGEMENT, ET AL.,
Respondents,

and

MOUNTAIN VALLEY PIPELINE, LLC,
Intervenor.


**MOUNTAIN VALLEY PIPELINE, LLC'S
OPPOSITION TO PETITIONER'S
<u>MOTION FOR STAY PENDING REVIEW</u>**

## INTRODUCTION

Over the past six years, Petitioner and other groups have filed dozens of lawsuits in this Court and others, challenging virtually every federal authorization issued for the Mountain Valley Pipeline project (the "Project"). Those suits have raised concerns under a range of laws, from the Administrative Procedure Act and the National Environmental Policy Act to various substantive statutes, agency rules, regulations, and guidance. Parties sought, and in some instances this Court granted, stays to interrupt and delay construction.

Petitioner's latest request, however, is critically different from every one that preceded it. Last month, overwhelming bipartisan majorities in both Houses of Congress enacted, and President Biden signed into law, legislation to "[e]xpedit[e] [c]ompletion of the Mountain Valley Pipeline." Fiscal Responsibility Act of 2023, Pub. L. No. 118-5, § 324, 137 Stat. 10, 47–48 (2023) (the "Act"). In that legislation, Congress expressly "ratifie[d] and approve[d]" all federal authorizations for the Project, including the specific agency actions challenged here—and it did so "[n]otwithstanding any other provision of law." *Id.* § 324(c)(1). The Act directed all agencies to "continue to maintain" those permits, *id.* § 324(c)(2), and compelled the U.S. Army Corps of Engineers (the "Corps") to issue the one then-remaining federal

2

authorization within 21 days, *id.* § 324(d) (directing "EXPEDITED

APPROVAL").  And Congress expressly stripped all courts—including this

one—of "jurisdiction to review any action" by a federal agency granting an

authorization necessary "for the construction and initial operation at full

capacity of the Mountain Valley Pipeline"—again, a category that

unambiguously includes this case.  *Id.* § 324(e)(1).  In case its intent to facilitate

prompt completion of this Project was not clear enough, the statute expressly

"supersedes any other provision of law (including . . . any . . . other statute,

any regulation, any judicial decision, or any agency guidance) that is

inconsistent with the issuance of any authorization . . . or other approval for

the Mountain Valley Pipeline."  *Id.* § 324(f).

Petitioner nonetheless urges this Court to stay the authorizations issued

by the United States Forest Service (Forest Service) and the Bureau of Land

Management (BLM) authorizing construction in the Jefferson National Forest

(JNF), precisely for the purpose of interrupting construction that has already

begun with Congress' explicit blessing.  This Court lacks jurisdiction to grant

the relief sought or any other.  Even assuming jurisdiction, Congress has

ratified the underlying agency actions and superseded any provision of law that

could have conceivably served as a basis for relief.  Granting a stay of any kind

would fly in the face of this recent, on-point, and emphatic Congressional

3

command that the remaining construction of the Mountain Valley Pipeline
must proceed without further delay because "construction and operation of the
[Project] is required in the national interest." *Id.* § 324(b).  The motion must be
denied.

**BACKGROUND**

## I.     Current Status of the Project

The Project is "already mostly finished." *Appalachian Voices v. U.S. Dep't
of the Interior*, 25 F.4th 259, 282 (4th Cir. 2022).  Generally, only stream
crossings, work in the JNF, and final restoration remain.  Only 3.39 acres of
planned tree clearing remains, compared to the 4,444.6 acres already cleared,
including all trees in the JNF.  Major earth-disturbing activities—clearing,
grading, and trenching—are substantially complete outside the JNF.  Ex. 1,
Decl. of Robert J. Cooper ¶¶ 4–5.



Over the past several months, Mountain Valley Pipeline, LLC (Mountain Valley) received numerous authorizations that allow Mountain Valley to resume construction and complete the Project. Among those authorizations are approvals from Forest Service and BLM to construct the Project in the JNF. *Id.* ¶ 8. On June 28, 2023, the Federal Energy Regulatory Commission (FERC) authorized Mountain Valley to resume construction generally, and on July 3, 2023, BLM formally authorized resumption of construction in the JNF. *Id.*

## II.    The 2022 Decision and Proceedings on Remand

In *Wild Virginia v. United States Forest Service*, 24 F.4th 915 (4th Cir. 2022), this Court vacated the authorizations the Forest Service and BLM issued in 2021 authorizing construction of the Project in the JNF. While the Court rejected most of the arguments leveled against those approvals, it found fault with three aspects of the Forest Service's analysis. First, it concluded that the agency had not properly explained how real-world data that some commenters alleged showed increased sedimentation from the Project could be reconciled with modeling that showed only minimal sedimentation increases from the Project. *Id.* at 927–28. Second, the Court concluded that the Forest Service should have waited for FERC to complete its analysis of the effects of using conventional bores for stream crossings before authorizing the use of

6

those construction methods in the JNF. *Id.* at 928–30. Finally, the Court concluded that the Forest Service had not complied with its Planning Rule[1] based on its failure to consider potential real-world sediment impacts. *Id.* at 931. And, the Court expressed doubt regarding the agency's interpretation of the Planning Rule. *Id.* at 931–32.

On remand, the agencies comprehensively addressed each of these points. With respect to sedimentation effects, the Forest Service evaluated sedimentation and turbidity data from the United States Geological Survey (USGS); Virginia Department of Environmental Quality, Mountain Valley, and Transcon monitoring information; and information regarding Mountain Valley's compliance history. The Forest Service explained in its Final Supplemental Environmental Impact Statement (SEIS) why these data do not upset its previous conclusions about the Project's potential sedimentation effects. Ex. A (ECF No. 25-3) at 39–49. The USGS data are not suitable for validating modeling results and, in all events, show no statistically significant increase in turbidity after construction commenced. *Id.*

The Forest Service also considered the environmental effects of the conventional bore construction method. Ex. A at 198–205. The agency

---

[1] *See* Forest Service, National Forest System Land Management Planning, Final Rule, 81 Fed. Reg. 90,723 (Dec. 15, 2016) (codified at 36 C.F.R. pt. 219).

7

considered FERC's conclusions and then conducted its own independent analysis and concluded that the use of conventional bores would "result in fewer adverse effects for stream crossings" within the JNF. *Id.* at 202.

And the Forest Service explained in depth how the Planning Rule applies to project-specific amendments like the amendments to the JNF Forest Plan proposed for the Project. During the public comment period on the draft SEIS, the Petitioner submitted voluminous comments advancing its interpretation of the Planning Rule. The Forest Service fully analyzed these assertions and thoroughly responded to them in the final SEIS. *See id.* at 235–38, 241–42, 249–51, 253–58; *see also id.* at 184–86. The Forest Service also systematically explained in the text of the SEIS, and in a separate appendix with additional detail, how it faithfully adhered to the Planning Rule's requirements in authorizing the JNF Forest Plan amendment for the Project. *Id.* at 64–105, 135–86.

The Forest Service finalized its SEIS in April 2023 and issued a Record of Decision on May 15, 2023. BLM issued its Record of Decision on May 17, 2023.

## III. The Fiscal Responsibility Act of 2023

On June 3, 2023, President Biden signed into law the Fiscal Responsibility Act of 2023. Section 324 of the Act "finds and declares that the

8

timely completion of construction and operation of the Mountain Valley Pipeline is required in the national interest." Act § 324(b). To that end, the Act provides that "no court shall have jurisdiction to review any action taken by" an administrative agency "necessary for the construction and initial operation at full capacity of the Mountain Valley Pipeline . . . whether issued prior to, on, or subsequent to the date of enactment of this section, and including any lawsuit pending in a court as of the date of enactment of this section." *Id.* § 324(e)(1). The Act also "ratifies and approves" all administrative actions "necessary for the construction and initial operation at full capacity of the Mountain Valley Pipeline." *Id.* § 324(c)(1). Finally, the Act "directs the [respective] Secretar[ies] . . . to continue to maintain such authorizations, permits, verifications, extensions, biological opinions, incidental take statements, and any other approvals or orders issued pursuant to Federal law necessary for the construction and initial operation at full capacity of the Mountain Valley Pipeline." *Id.* § 324(c)(2). And, significantly here, the Act gives the D.C. Circuit exclusive jurisdiction to entertain any challenges to Section 324 itself or arguments that "an action is beyond the scope of authority conferred by [Section 324]." *Id.* § 324(e)(2).

## STANDARD OF REVIEW

Preliminary relief "is an extraordinary remedy never awarded as of right" but only "upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22, 24 (2008); *see also Nken v. Holder*, 556 U.S. 418, 433–34 (2009).  A party seeking injunctive relief must show "[1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest." *Winter*, 555 U.S. at 20; *Nken*, 556 U.S. at 434.  Courts must consider each *Winter* factor separately, and all four must be satisfied.  *See Pashby v. Delia*, 709 F.3d 307, 320–21 (4th Cir. 2013).

## ARGUMENT

### I.    Petitioner has not complied with Rule 18(a)(2).

Petitioner has failed to comply with Federal Rule of Appellate Procedure 18(a)(2), which requires any party seeking a stay of administrative action to first seek relief from the agency.  Petitioner, in its motion (at 5), says such a request would have been futile because Section 324(c)(2) requires the agencies to maintain the authorizations.  But its entire case is premised on the claim that Section 324 is unconstitutional.  The agencies do not agree with Petitioner on that point, but that disagreement does not eliminate the need to satisfy Rule

18(a)(2).  In every challenge to agency action, the petitioner seeks review on an issue where the agency disagrees.  If that mere disagreement were sufficient to make seeking relief from the agency impracticable, the rule is a dead letter.

## II.    Petitioner is unlikely to succeed on the merits.

### A.    Section 324's unambiguous text prevents the Court from taking any further action in this case other than dismissing it.

Absent jurisdiction, this Court must dismiss the case and proceed no further.  "'Without jurisdiction the court cannot proceed at all in any cause. Jurisdiction is power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause.'"  *Steel Co. v. Citizens for Better Env't*, 523 U.S. 83, 94 (1998) (quoting *Ex parte McCardle*, 7 Wall. 506, 514 (1868)); *see also Monaco v. WV Parkways Auth.*, 57 F.4th 185, 187 (4th Cir. 2023).  "The requirement that jurisdiction be established as a threshold matter 'spring[s] from the nature and limits of the judicial power of the United States' and is 'inflexible and without exception.'"  *Steel Co.* 523 U.S. at 94–95 (quoting *Mansfield, C. & L. M. Ry. Co. v. Swan*, 111 U.S. 379, 382 (1884)).

As Mountain Valley has explained, *see* ECF Nos. 12-1 and 41, Section 324 of the Act eliminates subject-matter jurisdiction over all challenges to authorizations for the Project, including this challenge, which Petitioner filed

11

the day Congress passed the Act and mere days before the President signed it into law.

First, Section 324(e)(1) expressly strips federal courts of jurisdiction to review Project authorizations, including the authorizations at issue in these consolidated cases. ECF No. 12-1 at 4–5. That eliminates this Court's jurisdiction to hear this case and to grant the relief sought in Petitioner's motion.

Second, in Section 324(c)(1), Congress ratified and approved the authorizations, thereby elevating these agency actions to actual legislation. That moots this case. *See* ECF No. 12-1 at 5–7. Even if the Court could have found fault with the agency's decision-making under the Administrative Procedure Act, National Environmental Policy Act, or any other law prior to enactment of the Act, it cannot now grant Petitioner any effective relief, because Congress has now amended the applicable law and ratified and approved those agency actions and has directed each agency "to continue to maintain" those authorizations going forward. Act § 324(c)(2); *Incumaa v. Ozmint*, 507 F.3d 281, 286 (4th Cir. 2007) ("'[I]f an event occurs while a case is pending on appeal that makes it impossible for the court to grant any effectual relief whatever to a prevailing party, the appeal must be dismissed[.]'" (quoting *Church of Scientology of Cal. v. United States,* 506 U.S. 9, 12, (1992))); *Friends of the*

12

*Earth v. Haaland*, No. 22-5036, 2023 WL 3144203 (D.C. Cir. Apr. 28, 2023)

(per curiam) (dismissing as moot challenge to agency action where Congress

enacted statute during pendency of litigation that directed agency to issue

challenged authorizations, such that court could not grant effective relief).

Third, in opposing dismissal of its petition for review, Petitioner has

urged that Section 324 is unconstitutional.  *See* ECF No. 22-1.  But it made

those arguments in the wrong forum, and this Court should not and cannot

rely on them as a basis to grant a stay.  In particular, in Section 324(e)(2),

Congress vested "original and exclusive" jurisdiction in the D.C. Circuit to

hear any challenges to the constitutional validity of Section 324 or that an

agency action is beyond the scope of authority conferred in that section.  To

Mountain Valley's knowledge, Petitioner has made no effort to present its

constitutional challenges to the D.C. Circuit.[2]  While Petitioner is incorrect

that Section 324 is unconstitutional, *see* ECF No. 41 at 7–12 , its refusal to

---

[2] Notably, several of Petitioner's fellow Project opponents elected not to
present their constitutional challenges in the D.C. Circuit when given a clear
opportunity to do so.  *See Appalachian Voices v. FERC*, No. 22-1330 (D.C. Cir.
filed Dec. 23, 2022).  Indeed, those project opponents actively sought to avoid
the D.C. Circuit addressing the constitutionality of Section 324, by moving to
dismiss their case voluntarily.  Those parties also declined to contest either the
application or validity of Section 324 in their response to Mountain Valley's
motion to dismiss that case for lack of jurisdiction, which raised the same
grounds for dismissal that Mountain Valley asserted in this Court.

pursue its challenge in the court Congress vested with jurisdiction to hear it precludes its resort to equity here.

But if, contrary to the plain language of Section 324(e)(2), the Court concludes it has authority to address Petitioner's claim that Section 324 is invalid, it still must adjudicate that claim before it can act to grant a stay or other relief. The *Steel* rule is "inflexible and without exception," least of all for the type of extraordinary relief Petitioner seeks. *Cf. Winter*, 555 U.S. at 24 (preliminary injunctive relief is an "extraordinary remedy" not awarded as of right). In other words, this Court cannot grant the relief sought unless it first concludes that Section 324 is unconstitutional in multiple respects—both insofar as that statute explicitly strips this Court of jurisdiction to review the underlying agency actions, and insofar as it ratifies and affirms the challenged agency actions, depriving this Court of Article III jurisdiction because it cannot grant effective relief. And as Mountain Valley has explained, *see* ECF No. 41 at 7–12, the Court can reach none of these conclusions, much less all of them.

## B.    The Forest Service comprehensively considered and rejected Petitioner's unworkable interpretation of the Planning Rule.

While Section 324 of the Act precludes the Court from reaching the merits here (due to lack of jurisdiction) and ratifies the challenged agency actions "[n]otwithstanding any other provision of law[,]" Act § 324(c) (thus foreclosing Petitioner from showing any likelihood of success on the merits

14

even assuming jurisdiction), Mountain Valley calls the Court's attention to the Forest Service's comprehensive refutation of Petitioner's unworkable interpretation of the Planning Rule. Ex. A at 64–105, 135–86, 235–38, 241–42, 249–51, 253–58. The Forest Service took this Court's mandate in *Wild Virginia* seriously. Had Section 324 not passed, the agency's thorough explanation of the Planning Rule and how it applied it here would be more than sufficient to defeat Petitioner's attempt to make a clear showing of likelihood of success on this point.

## III. The balance of equities favors denying the stay.

"Equity demands that those who would challenge the legal sufficiency of administrative decisions concerning time sensitive public construction projects do so with haste and dispatch. To require any less could well result in costly disruptions of ongoing public planning and construction." *Quince Orchard Valley Citizens Ass'n v. Hodel*, 872 F.2d 75, 80 (4th Cir. 1989). Petitioner has not met that requirement here.

Mountain Valley received the last of its authorizations at issue here on May 17, 2023. The actions Petitioner now challenges were final at that point, and Petitioner could have filed its petitions for review immediately thereafter. Instead, Petitioner waited for weeks to even file its petitions, and then waited

nearly a month to file a motion for stay pending review. This delay is inexcusable for multiple reasons.

First, Mountain Valley's construction schedule is no secret. In related case *Appalachian Voices v. United States Department of the Interior*, No. 23-1384, (4th Cir. filed Apr. 10, 2023), Mountain Valley has regularly updated the Court and the parties as to the status of various authorizations and Mountain Valley's construction plans. On May 30, 2023, Mountain Valley notified the Court that it expected to commence full construction soon after receiving its section 404 permit from the Corps, perhaps as early as June 15, 2023. *See* No. 23-1384, ECF No. 33. And days later Mountain Valley clarified that it would receive that permit on or before June 24, 2023. *See id.*, ECF No. 40-1.

In its motion, Petitioner suggests that it did not seek a stay sooner because BLM had not yet issued a notice to resume construction. That claim is simply not credible in the face of Mountain Valley's repeated public statements, including representations to this Court, regarding its intent to resume construction promptly after receiving its permit from the Corps. For reasons of its own, Petitioner chose to wait to file this motion, and equity will not tolerate that delay.

Second, the merits arguments Petitioner makes in its stay motion are not new. These are the same arguments Petitioner has made in comments to the

16

Forest Service on the agency's final SEIS. *Compare* ECF No. 25-1 at 6–18 *with* ECF No. 25-3 at 235–38, 241–42, 249–51, 253–58. So it's not as though Petitioner needed time to review the administrative record to identify alleged flaws it seeks to remedy on review. It has planned to make these challenges to the agencies' renewed authorizations all along and, with even ordinary diligence, could have presented them to the Court in a timely stay motion.

Third, by waiting, Petitioner will cause harm to the environment. Mountain Valley already has mobilized construction resources and has resumed work in the JNF. Now that work has begun, it is imperative that it be completed expeditiously.[3] The period of construction is when environmental resources are at greatest risk. Stopping that work now will only prolong the period when the right-of-way within the JNF is disturbed and do more harm than good for the environment.

Because of Petitioner's delay, the cost of a stay to Mountain Valley has only been magnified. If the Court grants the stay, Mountain Valley now must suspend work in the JNF, stabilize areas only recently disturbed, and remove equipment only recently deployed. That cost would easily exceed $5 million

---

[3] BLM's Right-of-Way Notice to Proceed (*see* ECF No. 32-2, Exhibit 1 to Petitioner's Motion for Temporary Administrative Stay (ECF No. 32-1)) outlines the various tasks Mountain Valley intends to undertake in the JNF and the schedule by which it plans to complete them in the 2023 construction season.

and could have been avoided had Petitioner not delayed.  Ex. 1 ¶ 11.  And that is on top of the roughly $3 million per month Mountain Valley will need to incur to maintain temporary erosion controls in the JNF portion of the right-of-way during the pendency of any stay.  *Id.* ¶ 15.

A stay of even a few weeks will prevent the Project from being placed in service by the end of the year as currently planned.  Once the Court issues a stay, Mountain Valley will need to de-mobilize equipment and work crews already deployed to the right-of-way in the JNF.  The process of re-mobilizing crews after a stay has been lifted will take several days, after which Mountain Valley must complete required pre-construction wildlife surveys and clear trees felled in 2018 and vegetation that has grown in the right-of-way since then— tasks that will take several weeks to complete.  Major earth-disturbing work in the JNF, such as grading, trenching, and boring underneath streams, will commence thereafter and take roughly three months to complete.  But those tasks become increasingly difficult to complete safely after the onset of winter conditions, due to shorter work days, destabilization of work areas due to the freeze-thaw cycle, and winter storms.  In Mountain Valley's experience, if these major earth-disturbing tasks are not substantially complete before early November, they cannot be completed until spring under ordinary conditions.  Ex. 1 ¶ 12.

Consequently, unless a stay is lifted by July 26, 2023, Mountain Valley will not be able to deliver natural gas to the customers who need it this winter, *see infra* at 19–22, and likely will not be able to achieve an in-service date before Spring 2024.  Ex. 1 ¶ 12.

## IV.    Any delay in completing construction will frustrate the public interest.

In Section 324(b) of the Act, Congress specifically declared that "timely completion of construction and operation of the Mountain Valley Pipeline is required in the national interest."  Congress then identified four concrete benefits that completion of the Project would deliver:  The Project:

> [1] will serve demonstrated natural gas demand in the Northeast, Mid-Atlantic, and Southeast regions,
>
> [2] will increase the reliability of natural gas supplies and the availability of natural gas at reasonable prices,
>
> [3] will allow natural gas producers to access additional markets for the project, and
>
> [4] will reduce carbon emissions and facilitate the energy transition.

*Id.*

To remove any doubt on the matter, Congress declared that Section 324 "supersedes any other provision of law" that would impede the authorizations necessary to complete construction.  *Id.* § 324(f).  And, of course, by ratifying and approving all authorizations and then removing jurisdiction of federal courts to review them, Congress demonstrated pellucidly both that the interest

19

in completing this Project pursuant to the rigorous conditions and limitations imposed by multiple overlapping federal and State authorizations takes precedence over other interests, and that Courts are not to override Congress' policy choice on this matter.

Petitioner (at 22) reluctantly acknowledges this point, but wrongly suggests that the national interest articulated in Section 324 must be balanced against other interests. But Petitioner cites no statutory authority for that assertion, and Section 324 says otherwise.

Petitioner also invites the Court (at 22–23) to second-guess Congress' conclusion that completing the Project serves the national interest by disputing one of the identified benefits. Citing the declaration of a retained consultant, Petitioner contends that the Project will not actually be able to serve demand in the Northeast, Mid-Atlantic, and Southeast regions. This Court has no office to second-guess Congress' conclusions. But Petitioner's consultant's opinions are flawed and overlook important ways by which the Project will better serve consumer demand. Ex. 2, Decl. of Justin Macken.

Granting *any* preliminary relief would frustrate Congress' clear expression of the national interest and is reason alone to deny the motion. But Congress' conclusion is grounded in the real-world impact of continued delay on everyday people who depend on natural gas for heat in the winter.

Demand for natural gas in the Mid-Atlantic and Southeast has risen, leading to substantial price increases and volatility.  Ex. 3 ¶¶ 3–5; Ex. 4 ¶ 6; Ex. 5 ¶ 12; Ex. 6 ¶ 2; Ex. 7 ¶¶ 9–10.  Winter storms pose a particular threat, regularly forcing natural-gas consumers to absorb massive price spikes.  Ex. 5 ¶12 (discussing effects of Winter Storm Uri); Ex. 3 ¶ 4 (discussing effects of Winter Storm Elliot); Ex. 7 ¶ 13 (same).  The completed Project will provide a reliable source of natural gas and insulate customers from harmful price fluctuations.  Ex. 3 ¶¶ 3–5 ; Ex. 4 ¶ 8; Ex. 5 ¶ 14; Ex. 6 ¶ 7; Ex. 7 ¶¶ 11, 17.

## CONCLUSION

The Court lacks jurisdiction to take any action in this case at all, much less impose the extraordinary relief Petitioner now seeks.  The Court should dismiss the Petition and deny Petitioner's motion as moot.

Dated:  July 10, 2023

/s/ George P. Sibley, III
George P. Sibley, III
J. Pierce Lamberson
Hunton Andrews Kurth LLP
951 E. Byrd St.
Richmond, VA 23219
Telephone:  (804) 788-8716
Facsimile:  (804) 343-4733
gsibley@hunton.com
plamberson@hunton.com

Donald B. Verrilli, Jr.
Ginger D. Anders
Helen E. White
Munger, Tolles & Olson LLP
601 Massachusetts Ave. NM
Suite 500E
Washington, DC 20001-5369
Telephone:  (202) 220-1100
Facsimile:  (202) 220-2300
Donald.Verrilli@mto.com
Ginger.Anders@mto.com
Helen.White@mto.com

*Counsel for Mountain Valley Pipeline, LLC*

**CERTIFICATE OF COMPLIANCE**

I hereby certify that this filing complies with the type-face requirements of Fed. R. App. P. 32(a)(5) and the type-volume limitations of Fed. R. App. P. 27(d)(2)(A). It contains 4,137 words, excluding the parts of the filing excluded by Fed. R. App. P. 27(d)(2) and 32(f).


    /s/ George P. Sibley, III

*Counsel for Mountain Valley Pipeline, LLC*

**CERTIFICATE OF SERVICE**

I hereby certify that on July 10, 2023, I electronically filed the foregoing

with the Clerk of Court using the CM/ECF System, which will automatically

send e-mail notification of such filing to all counsel of record.

/s/ George P. Sibley, III

*Counsel for Mountain Valley Pipeline, LLC*